Mr. Justice Story
 

 dé.'vered the opinion of the Court.—
 

 This was an action of
 
 assumpsit,
 
 brought by Ambrose Vasse, in the Circuit Cpurt, for the district of Pennsylvania, to recover from the plaintiffs in error, (who were defendants in the Court below,) a certain sum of money, received by them under the following circumstances-
 

 Previous to the year 1802, Vasse was an underwriter on va-; rious vessels and cargoes, the property of citizens of the United Stares- which.were captured, and carried into the ports of Spain and her dependencies, and abandonments were nlade thereof to Vasse, by the owners, and he paid the losses arising therefrom, prior to the year 1802. Vasse became embarrassed in his affairs, and his creditors proceeded against him, as a bankrupt; under the Act of Congress of 4th April 1800, ch. 19. An assignment was made accordingly to Jacob Shoemaker, (who is deceased,) and the defendants, Comegys and Pettit, who proceeded to take upon themselves the duties of assignees, and have eyer since continued to perform the same. Vasse wa£ discharged, under the commission ; and his certificate of discharge bears date the 28th of May 1802.’. In the year 1824, the sum of 8846 dollars .14 cents, was received, by the defendants from the Treasury of the United States; beipg the sum awardeetby the commissioners sitting at Washington.
 
 *211
 
 Under the treaty with Spain, which ceded Florida to the United States, dated 22d óf February 1819, on account of the captures and losses aforesaid. On the 9th of December 1823,-Vasse filed a bill in equity in '.he Circuit Court of -.tlié district of Columbia; which is in- the case; upon which it seems no final proceedings were had on the merits. Under the commission of bankruptcy, Vasse-made a return of his effects to the commissioners; which is in the case.
 

 Upon these facts, a general verdict was found for the plaintiff, Vasse, for the. sum of 8846 dollars 14 cents, subject to'the opinion of the Court, with liberty for either party to turn the same into a special verdict; and the Circuit Court gave judgment upon the facts in favour of the original defendant. The present is a writ of error, brought for the purpose of ascertaining the correctness of that judgment.
 

 Three questions have been argued at the bar.- — 1. Whether the award of the commissioners, under the treaty with Spain, directing the money to be paid to the defendants, as assignee!; of Vasse, (which is assumed to be the true state of the fact,) is conclusive, upon the rights of Vasse; so as to prevent his recovery in the present action. 2. If not, whether the abandonment of the vessels and cárgoes to him,. as underwriter, by the owners, and his payment of the losses, entitled him to the compensation-awarded, independent of -his bankruptcy. 3. If so, then, whether his right and title to';the compensation, passed by the assignment of the commissioners of bankruptcy, to the defendants, as his assignees, by the true intent and térms of the Bankrupt Act of 1800, ch. 19.
 

 1. A.s to the first point.—
 

 1. The treaty with Spain, of the 22d of February 1819, was satified on the 13th of. February 1821, by the government of the United-States. In the 9th article it provid_es, that the higlv contracting parties “ reciprocally renounce all claims for damages or injuries, which- they themselves, as well as their respective citizens and subjects may have suffered, until the time of signing this treaty;” and then proceeds to enumerate, in separate clauses, the injuries to which the renunciation extends.
 

 .. The 11th article provides, that the United States, exonerating' Spain from all demands in future, on account of the claims of their citizens, to which the renunciations herein contained, extend,. and considering them entirely Cancelled; undertake to make satisfaction for the same, to,an amount not exceeding five millions of dollars. To ascertain the full amount and validity of these claims, a commission, to consist of three commis» sioners, See., shall be appointed, &c., and within the space of three years from the time of their first meeting, shall
 
 “receive, examine.
 
 and
 
 decide upon the amount and validity of all claims
 
 
 *212
 
 included within the-descriptions above mentioned.” There' maining part of the article is. not material to be mentioned.
 

 It has been justly remarked, in the opinion of the learned Judge who decided' this cause in the Circuit Court; that it does not appear, from' the statement of facts, who were the persons who presented or litigated the claim before the Board of Commissioners; nor whether Vasse himself, was before the board; nor who- were the parties .to whom, or for whose benefit, the award was made. We do not think that the fact is material, upon the’ view which we- take of the authority and duties of the commissioners. The object of the treaty was to invest the commissioners with full power and authority to receive, examine, and decide upon the
 
 amount
 
 and
 
 validity
 
 of the asserted claims upon Spain, for. damages and injuries. Their decision, within the scope of this authority; is conclusive and final. If they pronounce the claim valid or invalid, if they ascertain the-amount, their award in the premises is not re-examinable. The 1 parties must abide by it, as the decree of a competent tribunal of exclusive jurisdiction.' A rejected claim cannot be brought again under review, in any judicial tribunal;, an amount once fixed, is a final ascertainment of the damages or injury. This is the obvious purport of the language of the treaty. But it does not- necessarily or naturally follow, that this authority,> so delegated, includes the authority to adjust all conflicting rights of different citizens to the fund so awarded. The commissioners are to look to the original' claim for damages and injuries \ against.Spain itself, and it is wholly immaterial for this purpose, upon whom it may, iu the intermediate time, have devolved ; or who was tire original legal, as contradistinguished from the equitable owner, provided he was an-American citizen. If the claim was to be allowed as against Spain, the present ownership^ of it, whether in assignees or personal representatives, or
 
 bona fide
 
 purchasers, was not necéssafy to be ascertained, in order to exercise their functions in the fullest manner. Nor could they be presumed to possess the means of exercising such a broader jurisdiction, with due justice and effect. They had no authority to compel parties, asserting conflicting interests, to appear and litigate before them, nor to summon witnesses to establish or repel such interests; and under such circumstances, it cannot be presumed, that it was the intention of either government, to clothe them with an autho.rity so summary and conclusive, with-means so little adapted to the attainment of the ends of a substantial justice. The Validity and amount of the claim being once ascertained by théir award, the fund-might well be permitted to pass into the hands of any claimant; and his own rights, as well as those of all others, who asserted a title to the fund, be left to the ordinary course
 
 *213
 
 of judicial proceedings in- the established Courts., wherd redress could be administered áccordinjg to the liáiure and extent Of the rights or equities of all the parties., 'We are therefore of opinion, that the award of the commissioners, in. whatever form made, presents no bar to-the action, if the plaintiff is entitled to' the money awarded by'the, commissioners. The case of Campbell vs. Mullett, 2
 
 Swanston’s Rep.
 
 551, is distinguishable. The claim in that cáse, had been laid before the commissioiiers,.and rejected by them, on the ground that the party was ¿lien'enemy; and if so, he certainly did hot «tíme into the purview" of the treaty. It was not. pretended, that*-the party had any title to the indemnity-,-unless it .could -be deerned partner-1 ship property, and,' as a partner, he was entitled- to share "in it. The Court considered that it-Was not partnership property'in -which he had a title; — that his cláim to any portion of ,it had been rejected,, upon the ground, that ,uch claim was not within the treaty; and the indemnity had been granted to the other partners, for their shares only, of the joint property, and they took no more than their- own shares; The Court then proceeded, upon the ground,- that there neither' was an original, nor a' derivative title,- tó the indemnity, in the .party now seeking to set it up. If an assignment. had been.shown from them to him, of their own interest in the claim o.r award, before or after it was- made, the case might have admitted of á very different consideration. Whatever, therefore, might be the authority of that- case upon general principles; upon which it is-' unnecessary to pass any opinion; it is "inapplicable to the pre^ • seht.
 

 ,2. The next question is not noticed ;in the opinion óf tho. Circuit Court, turns .upon the nature and effect-of-an-abandonment,, for a total loss to the- underwriters. ; Much argument has-been employed, and many authorities .introduced,, to prove what-rights and interests,-possibilities and-expectancies,' may or hiay not pass by assignment; we do not think'it-necessary to .review*--these authorities, or the principles' lipón which they depend, Upon the present occasion. In general,1 it •it.may be' affirmed, that mere personal torts,-which die with the party, and do' not survive to his personal representative, are not capable of passing by assignment; and that vested rights
 
 ad ' renisadin
 
 re, possibilities coupled with an interest, and claims growipg out of, and adhering to property, may pass by assignment. '' But the' material consideration here, is, whether upon the principles'of the law merchant, the right, title, inteisst or possibility, (call it which you may,)-to the indemnity awarded in this case, did not pass by the abandonment to Vasse.
 

 / We dti' not think, that upon an examination of the doctrines pf insurance, -there is any difficulty in this part of the. case. It
 
 *214
 
 ■ does not appeal’ on the record, whether there was, in this instance, any formal instrument of abandonment or not, nor is it material, for the law gives to the act of abandonment, when accepted, all the effects, which the most accurately drawn assignment would accomplish. By the act of abandonment, the insured renounces and yieldsNp to the underwriter all his right, title, and claims, to what may be saved; and leaves it to him to make the most of it, for his own benefit. The underwriter then stands in the place of the insured, and becomes legally entitled to all that can be rescued from destruction. This .is the. language of the elementary writers, and is fully borne out by-Mr. Marshall and Mr. Park, in their treatises on insurance.
 
 Mar. on Ins. B.
 
 1
 
 a
 
 14.
 
 Park on Ins. ch.
 
 9,
 
 p.
 
 228. 279. “ Where, (says Mr. Marshall) as in case of capture, the thing insured, and every part of it, is completely gope out of the power of the •insured, it is just and proper, that he should recover at once, as for a total loss, and leave the
 
 spes remperandi
 
 to the insurer; who will have the benefit of a recapture, or of any other accident, by which the thing'may be recovered.” Mr. Park uses equally strong language — he says “ the insured has a right to call Upon the underwriter for a total loss, and of course to abandon, as soon as he hears of such a calamity having happened; -his. claim to an indemnity not being at all suspended, by the chance of a future recovery of part of the property lost; because by the abandonment, that chance devolves upon the underwriters.
 
 ”
 
 It.is very clear, that neither'of these learned writers meant to confine these remarks to cases, where the specific property itself, .or its proceeds, were restored; for the whole current of their reasoning, in the context, goes to show, that whatever may be afterwards-recovered or received, whether in the course of judicial proceedings or otherwise, as a compensation for the loss, belongs to the underwriters; and for this purpose, they refer to the case of Randall
 
 vs.
 
 Cochran, (1
 
 Vez.
 
 98.) before Lord Hardwicke, where this' very point was adjudged.. In that case, the king had granted letters of reprisal against the Spaniards, for the benefit of his subjects, in consideration of the losses which they had sustained by unjust captures, and he appointed commissioners to distribute the'- produce of these reprisals among the sufferers; and the commissioners’would not suffer the underwriters, but only the owners, to make claim for the losses; although the owners were already satisfied for their loss, by the underwriters. Lord Hardwicke decreed, that the owner should account for the same to the underwriter; and said, ‘.‘the person who originally sustained the loss, was the owner, but after, satisfaction m ade to him, the insurer. No doubt, but from that time, as to,the goods themselves, if restored in specie, or compensation made for "them, the insured stood as a trustee for
 
 *215
 
 the insurer, in proportion to what he paid, although the commissioners did right to avoid being entangled in accounts, and ,in adjusting the proportion between them. Their commission was limited in time; they saw: who was owner ; nor was it material to whom he assigned his interest, as it was in effect after satisfaction made.” This f)ase reflects no inconsiderable light upon the point already discussed, as to the conclusiveness of the award of the commissioners. But it is decisive, that the assignment by abandonment, is competent not only to pass the property itself,- or its proceeds, if restored, after an unjust capture, but also any compensation awarded by way of indemnity therefor. The case before. Lord Ha-rdwicke, was the stronger, because the indemnity was awarded to the party by Ms own sovereign, and not by the sovereign of the captors. Mr. Marshall and Mr. Park manifestly contemplate the case ■ as establishing the principle, that any indemnity, however arising, is a trust for the underwriters, after they have paid the loss,
 
 Park on Ins. ch. 8,
 
 p. 229.
 
 Mar. on Ins. B.
 
 1,
 
 ch.
 
 14, § 4.
 

 The-case of Gracie
 
 vs.
 
 The New-York Insurance Company, (8
 
 Johns. R.
 
 237,) recognises the same principle, in its full extent. . That was a case of abandonment after a capture, and where there had been a final condemnation, not only by the Courts in France, but an express confirmation of the condemnation by the sovereign himself. One question was, whether the jury were-at liberty to deduct from the total loss/the value of the
 
 spes reeuperandi.
 
 The Court held that- they were not. Mr. Chief Justice Kent, in delivering the opinion of the Court, said; “if France should, at any future period, agree to, and actually make compensation for the capture and condemnation in question, the government of the United States, to whom thq compensation would, in the first instance, be payable, would become trustee for the party having the equitable title to. the reimbursement; and this would 'dearly be the defendants [the underwriters,)] if they should pay the amoupt,
 
 íkc.”
 
 The case of Watson
 
 vs.
 
 The Insurance Company of North America, (1
 
 Binn. R.
 
 47,) proceeds upon the same principles.- It admits' that the
 
 spes reeuperandi
 
 passes by an abandonment to the underwriter; and the question there was, whether its value, when not abandoned, was to be deducted from the total loss'. We consider it, then, clear, upon authority, that the right to the compensation in this case, was in its nature assignable, and passed by abandonment to Vasse; and'upon principle^ we should arrive at the same conclusion. . The right to indemnity for an unjust capture, whether .against, the captors or the sovereign; whether remediable in his own Courts, or by his own extraordinary interposition and grants upon private petition, or upon public negotiation, is a right attached-, to -the
 
 *216
 
 ownership of the property itself, and passes by cession to the use of the ultimate sufferer. If so assignable to Vasse, it was equally, in its own nature, capable of assignment to others; and the only remaining inquiry would be, whether it had so passed by assignment from him.
 

 The case of Campbell
 
 vs.
 
 Mullet, (2 Swanston, 551,) already adverted to, 'has been pressed upon the attention of the Court as indicating, certainly not as deciding, a doctrine somewhat ■different. -In that case, the compensation had been awarded by the commissioners under the British'treaty of 1794, to American. citizens, for unjust captures made by -British cruisers; and’there had been condemnations by the highest appellate Courts of .prize. One argument was, that the compensation' so granted, was not to be . deemed a mere donation to the parties who received it for their own use, but an indemnity. The Master of the Rolls, in answer to this, said: “ It is said that the sums awarded by the commissioners arj> not matter of bounty or donation. Can they be a matter of right ? What is right.? That which may be enforced in a Court of Justice. Had the parties, whose property was condemned by irrevocable sentence, any right ? What they obtain after that condemnation, is not founded in right, but in policy between the nations, providing compensation to individuals, who have lost property by sentences, which are thought unjust. The grounds of relief before the commissioners, are, the want of any redress in any municipal Courts. Whatever the individual obtains, is not on the ground of right, or private property, but of hardship and injustice. Though this, therefore, is not a case of pure donation, as of a gift without any thing in the nature of a consideration, yet for the purpose of being contrasted with property or right, it is a donation, not a restoration of a former right, but from a new fund, belonging to an independent authority, a grant to the sufferer for what he lost.” Such is the language of the learned Judge, and we cannot say that the reasoning is at all satisfactory. It is not universally, though it may ordinarily be one test .of -right,, that it may be enforced in a-Court of Justice. Claims and debts due from a sovereign, are not ordinarily capable of being so enforced. Neither the King of Great Britain, nor the government of the United States, is suable in the ordinary Courts of Justice, for debts . due by either. Yet, who will doubt, that such debts are rights ? It does not fallow, because an unjust sentence is ,irreversible,' that the party has lost all right to justice, or all claim, upon principles of public law, to remuneration. With reference to mere municipal law, he may be without remedy; but with reference to principles of international law, he has a right, both to the justice of his own and the foreign sovereign.. The the?
 
 *217
 
 ory, too, that an indemnification for unjust captures is to be deemed, if not a mere deviation, as. in the nature of a donation, as contrasted with right, is not admissible. It is reasoning against the clear text of the treaty itself. What says the treaty of 1794, § 7 ? That where American citizens have sustained losses or damages, “ by reason of irregular or illegal captures, or condemnations of their vessels, or other property, under colour of authority or commissions from His- Majesty, and adequate compensation cannot be obtained by the ordinary course of judicial tribunals, full and complete compensation for the same will be made by the British government to the said complainants. ” The very ground of the treaty is, that the municipal remedy is inadequate; and-that the party has a right to compensation for illegal .captures, by an appeal to the justice of the government. It was never understood, -that the case was one to which the doctrine of donation applied. The right to compensation, in the eye of the treaty, was just as perfect, though the remedy was merely by petition, as the right-to compensation for an illegal conversion of property; in a municipal Court- of Justice. The case of Randall
 
 vs.
 
 Cochran, (1
 
 Vez.
 
 98,) stands upon the true ground. It considers the right of indemnity as travelling with the «right of property. In that case it might have been said, in answer to the claims of the underwriters,- that they had no title, because it was a case of donation by the crown, out of funds provided by reprisals. So, perhaps, the commissioners thought; but Lord Hardwicke decided otherwise. There cannot be a doubt, -that if the party injured had died before or after the treaty was múde, and compensation had been subsequently decreed, it would have been assets, and distributable as such, in the hands of his executors and administrators. The remarks which have been made upon this case, are equally applicable to the provisions for indemnity, under the treaty'with Spain. It recognised an existing right to compensation, in the aggrieved parties; and did not, in the most remote degree, .turn upon the notion of a donation or gratuity. It was denjanded by our government as. matter of right, .and as such it was granted by Spain.
 

 We may now come to the point, which indeed is the qnly one of any intrinsic difficulty in the cause — whether the right, so vested in Vasse, to compensation, passed, under the bankruptcy assignment, to his assignees ? That this is a question free of doubt, will not be affirmed by any person who has thoroughly examined it, or read with care the elaborate opinion of the Court below. The true solution of’ it must be found in a just exposition of the object, intent, and language of- the Statute of Bankruptcy of 1800, ch. 19. The Act begins by an enumeration of the persons who’ are liable to be declared bank- '
 
 *218
 
 rupts, and among them are “ underwriters or marine insurers,” This plainly shows the sense of the legislature, that such persons might, by the ordinary course of their business, be reduced to insolvency, and be justly placed within the beneficial operation of such a law. It tends also to the presumption, that it might have, been the intent of the legislature, that the rights devolved upon them, from the nature of the losses for which they were liable, so far as under any circumstances they might or could be valuable rights, should be available as a fund for the benefit of their creditors, in case of their bankruptcy. As the legislature meant to exonerate the underwriter from all future liability for his debts; it would seem natural that the claims abandoned to him, which might constitute the whole of his effective estate, should be’vested in his assignees, for the benefit of his, creditors. If he possessed claims by abandonment, to the amount of 100,000 dollars, which might, by future events, be. rendered more or less productive, and which might be, (as they have often been,) saleable and trans-ferrible in the market; such funds, present ór expectant, might well be deemed within the legislative policy, and fit to pass to-the creditors by assignment. It might otherwise happen, that large recoveries might ultimately vest in the bankrupt, for his own exclusive benefit, upon rights pre-existent, and vested at the time of his bankruptcy. If such a course of legislation would not be unnatural, let us next see what is the precise language of the statute itself. Tlje fifth section declares, that it shall be the duty of the commissioners, after the party has been declared a bankrupt, “ to take into their possession all the estate,
 
 real
 
 and
 
 pei'sotial,
 
 of every nature and description, to which the bankrupt may be entitled, either in law or equity, in any manner whatsoever, See.; and'also to take into their possession, and secure, all deeds and books of accounts, papers and writings, belonging to the bankrupt; and shall cause the same to be safely kept, until assignees shall be chosen, or appointed.”
 

 These words are certainly very general and comprehensive. “ All the estate, real and personal, of every nature-and description, in law or equity,” are broad enough to cover every description of vested right and interest, attaches to and growing, out of property. Under' such words, the whole property of a testator would pass to his devisee. Whatever the administrator would take, in case of intestacy, would seem capable of' passing by such words. It will not admit of question, that the rights .devolved upon Vasse, by the ibandonment, could, in case of his death, have passed to his personal representative; and when the money was received, be distributable, as assets. Why then should it not be assets in the hands of the assignees ?
 
 *219
 
 Coiisidering it in the light in which' Lord Hardwicke viewed it, as an equitable trust in the money; it is still an interest, or at all events, a possibility coupled with an interest. Besides, “all deeds, books, accounts, papers;, and writings of the bankrupt,” are to be taken into possession. Now the abandonment, and other documents connected with it, fall precisely within these terms; and as we shall immediately see, whatever is taken possession of by the commissioners, is to be passed to the assignees. The sixth section provides “that the commissioners shall assign, transfer, or deliver over, all and singular the said bankrupt’s
 
 estate
 
 and ejects aforesaid, with “
 
 all muniments and evidences
 
 thereof,” to the assignees so chosen. .And for the most part, the words “ estate and effects” are. used throughout the Act, as descriptive of the property passing under the assignment. The 11th, 12th, and 13th sections of the Act, respect more particularly the transfer of the real es-’ tate, of .the mortgages, and of the debts of the bankrupt. It is only necessary to say, that they contain no language abridging the proper inferences deducible from the language of the fifth section.
 

 The 18th section contains provisions respecting the surrender and examination of the bankrupt, and are very material. It provides, that upon such examination, he shall “fully and truly disclose and discover all his or her effects and estate, real and personal, and how and in what manner, and to whom and upon what consideration, and at what time or times, he or she hath disposed of, assigned, or transferred, any of his or her goods, wares', or merchandise, moneys, or other effects and estate; and of all books, papers, and writings, relating there-' unto, of which he or she was possessed; or in which he or she was in any ways interested or entitled, or which any person or persons shall then have, or shall have had in trust for him or her, or for his or her use, at any time
 
 before
 
 or after the issuing of the said commission; or whereby such bankrupt, or his or her family,
 
 then hath or may
 
 have,
 
 or expect any profit, possibility of profit, benefit,or advantage whatsoever,
 
 <$-c.” It then goes on further .to provide, that the bankrupt shall, upon such examination, execute in due form of law, such conveyance', assurance, and assignment, of his or her estate, whatsoever and wheresoever, as shall he deemed and directed by the commissioners to
 
 vest the same
 
 id the “ assignees;” and also requires the bankrupt to deliver up “ all books, papers, and writings relating thereunto,” which are in his possession, custpdy, or power, at the time of the examination: upon his default in these particulars, he is deemed a fraudulent bankrupt, and deprived of a right to a certificate of discharge, and subjected to severe punishments. If there were any doubt upon the meaning of the language of
 
 *220
 
 the fifth section, we think it is cleared up and illustrated.by that of the present.. Here, the words
 
 “profit, possibility
 
 of
 
 profit, benefit,
 
 or
 
 advantage
 
 whatsoever,” are used, and show that •mere interests
 
 in presentí,
 
 and capable of present enjoyment, were not alone within the scope of the legislative enactments, but also all such in unrests, or possibilities of interest, as might thereafter beneficially arise from present vested1 rights. It extends to such effects and estate, “whereby the bankrupt then hath, or may have or expect any profit. ” It has been suppos- ' ed, that this clause -looks solely to property, which was not capable of assignment, at the time of the bankruptcy, because not then vested; inasmuch as-the bankrupt himself, .and not the commissioners, is required to make an assignment of it.. If this were so, it would not' affect the present case, because we are of opinion, that the claim under consideration, was completely vested in right and interest in Vasse, at the time of his bankruptcy. We think, however, that this clause does not justify so narrow an interpretation. The disclosure is required of estate and effects, in which the bankrupt was interested, as well
 
 before
 
 as after the issuing of the commission; and the bankrupt is required to execute conveyances, not of such estate and effects merely, as accrued after the commission, but of his estate, “whatsoever and wheresoever.” The object of the provision was to,-make such conveyances auxiliary tó, and confirmatory of the assignments made by the commissioners; and we believe, that in practice, it was so generally understood and acted on, while the statute was in force. The 50th section of the Act, has been supposed to demonstrate the correctness of the construction of the statute contended for by the counsel for the original plaintiff. It declares “that,if any estate, real or personal, shall
 
 descend, revert to,
 
 or become
 
 vested
 
 in, any person, after'he or she shall be declared a bankrupt, and before he or she shall obtain a certificate, See. all such estate shall, by virtue of this Act, be vested in the said commissioners, and shall be by them assigned and conveyed to the assignees, &c.. This section plainly refers to estate to which the bankrupt had no right or title whatever, in law or equity, vested in interest or in possession, at the time of his bankruptcy. The cases put, are of property descending, reverting to, or becoming vested in the bankrupt. In respect to a descent cast, after the bankruptcy, it is manifest, that nothing could pass by any antecedent assignment of'the commissioners.
 

 The heir, during the lifetime of his ancestor, has no right, claim, title, or interest, in the ancestral estate. It is a mere. naked expectancy, fiable to be defeated at.the will of the ancestor at all times; and in no just sense, a possibility of interest, a right in the thing itself. The other words, “ reverting
 
 *221
 
 to, or become vested”' in the bankrupt, require a like inter'pretation. They allude to casés where the party had nothing vested in him, as a subsisting interest, either absolute or contingent,
 
 in esse
 
 or
 
 in
 
 futuro, until after the bankruptcy: and when any such interest falls in before the Certificate of dis- ■. charge, the commissioners, and not the bankrupt, áre to as-, sign it; a circumstance which demonstrates that no stréss ought to be laid upon that part of the 18th section, already alluded to, ■ respecting a conveyance by the bankrupt himself; except as á confirmation, and not as a principal assurance. It seems to us then, that the 50th section aids, rather than shakes the interpretation of the statute, which has been already announced. ' It applies to no possibility of profit, benefit, or advantage, vested at the time of the bankruptcy, (as the present case is;) but to interests, accruing to the party for the first time,
 
 de 'jure
 
 as well as defacto, after the bankruptcy.. This view of the matter renders it unnecessary to consider, whether there is any substantial difference between the English statutes of bankruptcy and our own, on this subject; and of course, in the authorities applicable to it. Our opinion proceeds upon the purview and' objects, and on the terms of our own statute; and we are accordingly of opinion, that the judgment of the Circuit Court ought to be reversed, and a judgment entered in favour of the original defendants. It is to be understood, that upon the last point, this is the opinion of the majority of the Court.
 

 The cause must be remanded, with directions to enter a judgment accordingly, for the original defendants.
 

 This cause tame on, &c. on consideration whereof, It is ordered and adjudged by this Court, that the judgment of the said Circuit Court, in this cause, be and the same is hereby reversed and annulled — and that a judgment be. entered in the suit, in favour of the plaintiffs .in error, Cornelius Comegys and Andrew Pettit; and the cause remanded to said Circuit Court, with directions to enter judgment for the plaintiffs in error in this Court, Cornelius Comegys and Andrew Pettit, accordingly.