*637 By the Court,
Co wen, J.
The question is, whether the assignment of the compensation to come from the state carried a right not only to the moneys the state had agreed to pay, but what it might afterwards award as a gratuity.
By the terms of the sub-contract the plaintiff was to receive his pay from the canal commissioners according to the contract of the state. He was, on his part, to perform the stipulations in the contract, and pay to Lewis and Weed the price agreed upon as the value of the bargain made between himself and them.
After their bargain was made, a statute passed authorizing extra allowances to the contractors on the Chenango canal, under which an award was made in favor of Lewis and Weed of $600. One half of this having been paid to Weed, the plaintiff sues for the money as belonging to him.
The statute authorized the extra allowance to contractors. The words are, “ Those contractors who entered into contracts for the construction of any part of the Chenango canal &c., shall be entitled to receive, on the completion of their respective jobs,” the extra allowance deemed just and equitable by the canal board. Under this act the canal board awarded the moneys in question to Lewis and Weed; and it was paid to them by one of the canal commissioners according to the terms of the award, (See Sess. Laws of 1836, ch. 149, p. 201; and Ass. Doc. 121, on which the statute was founded.)
The plaintiff was neither the contractor with the state, nor was there any privity between him and the state. He paid Lewis and Weed nothing on account of what the state might afterwards give them, but took a stipulation for the right to receive the contract price. His obligation was to them. It was to furnish the residue of the materials and do the work which was wanting to finish the job. The whole was a mere sub-contract. Any one agreeing with him to assist him in his job would be in one sense a canal contractor, and come as much within the statute as himself. The compensation did not consist of all the moneys which should be paid to Lewis and *638 Weed; but the fay according to the contract with the state. The extra allowance is not only out of the words, but was evidently awarded to Lewis and Weed on account of the sacrifices personal to themselves which obliged them sell out their interest in the best way they could; and we are called on to do the office of snatching a charitable donation from the man for whom it was intended, and giving it to another who has suffered nothing. (See Assembly Doc. of 1836, No. 121.) But if the real suffering was on the side of the plaintiff, which the form of the gift and the report on which it was founded forbid us to suppose, what rule of law transfers a gift from an unworthy donee to another, because his wants may be more obvious ?
That the extra allowance was a mere gratuity, admits of no dispute. No oue will pretend that the sum allowed was due from the state, The case is the saipe as,if the money had been presented to any man who had never dealt with the plaintiff. It is like a pension given for sacrifices in the public service, or an accidental loss by fife. Being entirely independent of the contract, in contemplation of law, it cannot therefore be claimed that it passed as an incident to the stipulated wages due from the state; nor can it be supposed that it entered into the intent of the bargain between the defendant and the plaintiff. All that passed was an equitable -right in the legal interest of the defendant at the time. The defendant and his co-contractor held the whole legal interest. That and that only was transferred. '
Even in case of a chose in possession, a sale carries no more than the legal right at the time. A man sells and quit claims all right in a farm to the grantee in fee, the former having no title, or but an estate for years. Though the absolute estate afterwards come to him by descent or purchase, this shall not enure to the grantee’s benefit, (a) For this there are two rea- *639 sons; one that the intent to pass more than his right is not to be supposed. Both parties look to that as the measure of compensation. Another is, that the right which the grantor after-wards acquires is a mere possibility, and therefore incapable of being sold. (Co. Litt. § 446, p. 265 a.) The same rule prevails and is still more fully illustrated by the books in relation to personal property. (Long on Sales, 4, Boston ed. of 1839, and the cases there cited.)
The last point of view is of itself decisive. Assume that here was an intent to transfer a right to all the compensation to be paid by the canal commissioners in virtue of the contract, and moreover of any interest or gratuity afterwards to be granted by the state in respect to the contract. We are met at the outset by the words of Littleton. (Co. Litt. §446.) “Also these words which are commonly put in such releases, scilicet, {quce quovismodo infuturum habere patero,) are as voide in law : for no right passeth by a release but the right which the releasor hath at the time of the release made.” The same rule is laid down by all the cases, in regard to personal property. “ If the subject of the intended sale have no existence actually or potentially, there can be no valid sale.” (Long on Sales, 3 ed. before cited.) Again; “ A mere possibility or contingency not coupled with an interest-in, adhering to, or growing out of property, cannot be the subject of a valid sale¡ A grant of the wool of all the sheep the grantor shall ever have is void.” (Id, 4 ; Hob. 132 ; Carleton v. Leighton, 3 Meriv. 667, 671.) An assignment of the freight, earnings and profits of a whaling-ship, will not carry the oil collected by her in a subsequent voyage. (Robinson v. Macdonnell, 5 Maule & Selw. 228, 236.) Lord Ellenborough, C. J. said, “ At the time of this assign^ ment, C. & P. [the owners of the ship,] had no property actual or potential in this oil; it was altogether matter of chance whether any of it would have been obtained ) and even the voyage in which it was obtained does not appear to have been in contemplation.” A case and argument more in point With the present could scarcely have been framed. Who could *640 have contemplated with any degree of confidence that the agents of the state would volunteer in giving away moneys to to the contractors or any body else 1 I shall not, however, go much into a question which has been successively considered and illustrated by Sir Thomas Plumer in Campbell v. Mullett, (2 Swanst. 551, 571, 576 to 579,) by Washington, J. in Vasse v. Comegys, (4 Wash. C. C. Rep. 570, 573, 4,) and by Story, J., in the same case on error. (1 Pet. 193, 213.) All agreed, that a future voluntary donation or bounty from a government, is not property, and cannot be assigned in advance. The first case held that even a claim against a government for the wrongful seizure of property was not assignable. So held Mr. Justice Washington in deciding Vasse v. Comegys at the circuit; and the judgment was reversed on the sole ground that the subject assigned was not obtained under an award bestowing it as a bounty, but as a debt due from the government.(a) Randal v. Cockran, (1 Ves. sen. 98,) related to the assignment of property captured under letters of marque, for the benefit of the assignors ; and it was held that, in such a case, the award of .the commissioners for distribution enured to the benefit of the assignees. No case goes farther. If the property in the subsequent donation did not here pass to the plaintiff, the action for money had and received does not lie. To warrant such an action the defendant must have received moneys to which the plaintiff is entitled as actual proprietor under a contract executed. He must have jus in re. Even if Lewis and Weed may be considered as having agreed to pay over the moneys on receiving them, the contract is but executory, and the action should have been brought against both. At the utmost, the plaintiff had but jus ad rem¡ *641 I admit that a man may bind himself to pay over moneys to be recovered even for a personal • tort. He cannot pass them by assignment eo nomine, but he may bind himself by promise to pay them when received by him.(The People ex rel. Stanton v. Tioga C. P., 17 Wend. 73, and eases there cited.) I agree that a man may contract to sell lands or goods yet to be purchased by him in market. (Hibblewhite v. M'Marine, 5 Mees. & Welsb. 462, overruling Bryan v. Lewis, 1 Ry. & Mood. N. P. Rep. 386.) But I deny that a man may traffick even to that extent- in the charity of his neighbors, or the prospective bounty of his government. It is enough to say here that no such thing was attempted; at least no intent qf that kind is apparent on the face of this contract. But suppose it otherwise. A contract in prasenti to sell goods of which the vendor is not owner at the time, and has no other means of obtaining but by going into the market and purchasing them, has been holden void as a wager, and contrary to public policy. (Bryan v. Lewis, ubi supra.) That has been overruled ; and the contract enforced, not as a sale, but as a promise to deliver the goods at a future day. But would such a decision have been overruled if it had related to moneys yet to be received on charity, or as the bounty of the government 1 A man’s house and goods are lost by fire; can he trade in the proceeds of his misfortune 'l Or, to put the case in the words of Sir Thomas Plumer : If a partnership sustained an accidental loss by fire, and an individual were to make a donation to two of the partners, in compensation of their loss, would that be partnership property 1” (2 Swanst. 571.) To follow the hypothesis into the consequences contended for here, suppose the firm had made an assignment of their effects ; could the assignees claim it 1 The supposition would be scandalous, even if the assignment had stipulated for such a consequence. What .rule or what case ever extended the doctrine of assignment to matters of imperfect obligation, or, above all, sanctioned a traffick in the charities of life—begging for the benefit of assignees 1 The impolicy and wickedness of such a thing is a *642 sufficient answer. If community have been plundered by such bargains, the law has not yet lent itself to aid the conspiracy. To authorize similar practices upon the government, would be, if possible, still more scandalous. I have heard, to be sure, that contractors considered themselves as holding a sort of property in these extra allowances, from the facilities of obtaining them on the faith of united representations. That, however, does not change their legal character from mere naked donations. Allowing them to be made a subject of trade, therefore, is equally objectionable bn considerations applicable to private charity, but more so, as multiplying individuals who may have an interest in deceiving the public agents.
Independently, however, of public policy, I am of opinion that a simple expectancy in which the assignor has no interest, and which is unpurchaseable, can neither be assigned, nor would a contract for future assignment be valid. A mere j us precarium, a right resting in courtesy, is no more a matter of bargain than the virtue from which it emanates.
It is not necessary to go so far in order to see that this case is with the defendant. It is enough to see that the subject could not have passed by an assignment containing words of present transfer, even to the defendant’s assignees in bankruptcy or under the insolvent act; (Carleton v. Leighton, 3 Meriv. 667, 671;) a fortiori by an assignmént which could in no view carry any thing beyond an equitable interest.
In any view, I thiiik the nonsuit was right; and that the motion for a new trial should be denied.
Bbonson, J. concurred.
Nelson, Ch. J. dissented.
New trial denied.

 See McCarty v. Leggett, (3 Hill, 134.)

 As to tiie assignability of pay and pensions accruing .under grants from government, see Lam Magazine (London) Vol. 26, p. 350, et seq. See also Browning v. Bettis, (8 Paige, 568,) where it was held that the salary or compensation of a public officer, to become due at a future time for services yet to be completed, Could not be reached by a creditor’s bill in chancery.