Nott, J.,
delivered the opinion of the court:
The Supreme Court in the case of Gomegys v. Vasse (1 Peters, 193) held m regard to the commissioners sitting under the treaty of Spain of 1819:
“ They had no authority to compel parties asserting conflicting interests to appear and litigate before them, nor to summon witnesses to establish or repel such interests ■, and under such circumstances it can not be presumed that it was the intention of either Government to clothe them with an authority so summary and conclusive, with means so little adapted to the attainment of the ends of a substantial justice. The validity and amount of the claim being once ascertained by their award, the-fund might well be permitted to pass into the hands of any claim *80 ant; and his own rights, as well as those of a.ll others who asserted a title to the fund, be left to the ordinary course of judicial proceedings in the established courts, where redress could be administered according to the nature and extent of the rights or equities of all the parties.’
' And this court when defining its powers under the kindred statute which confers the jurisdiction of these French spoliation claims (Gray’s Case, 21 C. Cls. R., 340, 405) said:
“We can not agree that Congress intended this court to perform what is in effect a physical impossibility and to throw upon us the task of probate courts in the investigation of the rights of thousands of descendants and devisees of the original claimants, who are now scattered, in all human probability, to the four quarters of the globe. To ask this court to go back to the year 1800 and follow from that time down the succession of every then existing claimant is to ask us to do that which under our jurisdiction and powers would be an impossibility. A much more reasonable interpretation of the act appears upon its face, and applying that interpretation to this case we have found that the claimant, as administrator of the owner of the schooner Sally, is the owner of the claim. We consider it no part of our duty under the statute to place ourselves in the position of a court of probate and report to Congress the manner in which any ultimate recovery should, under the laws of the thirty-eight States and eight Territories of this Union, be distributed among the numerous next of kin or devisees of the original claimants and their descendants.”
Since that decision was rendered in the initial case a great number of cases have come before the court, representing hundreds of beneficiaries, and all that has transpired has demonstrated the wisdom, and indeed the necessity, of that conclu-sión.
The youngest of these claims are now more than eighty-eight years old. The original claimants were merchants, ship-owners, underwriters, partners in trade, joint-stock associations, and incorporated insurance companies. ■ Only three of the original claimants have thus far appeared, and they, it is needless to say, are bodies corporate. The individuals who lost by French spoliations were generally men of mature years. Some transferred their claims; others became insolvent, and their assets passed to assignees in bankruptcy or became subject to the operation of divers State insolvent laws ; some bequeathed their claims by will; some died intestate of them; all have long since passed away. Those claims which passed to assign *81 ees in bankruptcy have not remained in the hands of living witnesses, for those assignees have died, and their claims have passed to their administrators, who have, in many cases, likewise died, and such claims have again changed hands and passed to the administrators of the administrators. The partnerships were long ago dissolved, leaving the assets in the custody of the surviving partners, and they have long since died, leaving their administrators to represent both their own nest of kin and the next of kin of the other partners. The joint-stock associations have been wound up or merged in incorporated companies, leaving behind them obscure questions as to whether the claims passed to the new companies, or reverted to the original shareholders, or vested in the survivor of them for the benefit of all. A majority of the incorporated companies have likewise ceased to exist, and their claims are in the hands of receivers either for ihe benefit of creditors or of stockholders. Then again, many, if not all, of such creditors and stockholders have died or become insolvent and their interests have passed into the hands of other administrators and assignees in bankruptcy.
Into this labyrinth of unknown and unascertainable rights and equities the court has not attempted to enter. What it has endeavored to do is to ascertain the person in whom the legal title and custody exist; that is to say, the legal representative who in an ordinary suit at law or proceeding in equity would be deemed the proper party to maintain an action for the recovery of similar assets of the original claimants. In the cases of individual owners or underwriters the court has required a present claimant to file his letters of administration and prove to the satisfaction of the court that the decedent whose estate he has administered was the same person who suffered loss through the capture of a vessel. (The Ship Betsey, 23 C. Cls. R.., 277.) In cases of partnership the court has required evidence of survivorship, and has allowed only the administrator of the survivor to prosecute the claim. In cases of bankruptcy, it has held, under the decisions of the' Supreme Court, that the claim passed to the assignee, and that on his death it passed to his administrator (Erwin’s Case, 97 U. S. R., 392; Richards v. Maryland Insurance Company, 8 Grancb., 84), and where the evidence has shown the bankrupt estate to be still unsettled,' the court has held the legal title to be still vested in *82 the assignee. In oases of incorporated companies no longer in existence, the court has required only the decree of a court of competent jurisdiction transferring their rights of action to the hands of a receiver.
In none of these cases has the court assumed to determine who were the next of kin of a deceased claimant; nor whether there are any; nor in what proportion were the several interests of partnership owners; nor whether creditors or descendants have the superior equity; nor whether the children of a bankrupt are entitled to a residue of his estate; nor whether the receiver of a defunct corporation represents creditors or stockholders. In other words, the court has not assumed to determine what persons are legally or equitably entitled to receive the money which Congress may hereafter appropriate for the discharge of these claims.
When the validity of a claim against France and the relin- • quishment thereof by the United States under the second article of the treaty of 1800, and the amount in which the original claimant suffered loss, have been determined and reported, Congress will be in possession of all the facts which this court under its present restricted jurisdiction can possibly furnish. It will then be within the legislative discretion (1) to ascertain through the proper committees who are the persons who should receive the money, or (2) to provide for the ascertainment of that fact by additional legislation, or (3) to confide the money to the administrators and receivers who, with the exception of a few still-existing corporations, constitute the present claimants, trusting that they and the courts of which they are the officers and agents will distribute the funds among the creditors or next of kin of the original claimants. The decisions in these spoliation cases are not judgments which judicially fix the rights of any person ; and the obligations of the Government are so far moral and political that they can not be gauged by the fixed rules of municipal law for the measure of legal damages. When the validity of a claim as against France and the amount-of the losses which an American citizen suffered by her privateers have been determined, the court can render no further assistance to the legislative branch of the Government, and it will still remain the duty of Congress to determine two things — first, the measure of the indemnity for *83 which the United States should be held responsible; second, the persons who are equitably entitled to receive it.
The facts in the present case differ somewhat from the illustrative cases which have been cited. In. 1798 the firm of Smith & Buchanan were merchants and ship-owners, doing business in Baltimore, and sufferers by the depredations of the French privateers. In time the partnership was dissolved, whether by bankruptcy or by the death of the senior partner is one of the questions in the case. But be that as it may, in 1820 Samuel Smith, for himself and the firm of Smith & Buchanan, executed deeds of trust to Thomas Ellieott and Jonathan Meredith for the benefit of their creditors, whereby their claims for the capture of the Jane and her cargo passed to the trustees. In 1823, all of the parties to the transaction being alive, that is to say, both of the partners and both of the trustees, the latter presented a memorial for relief to the Spanish Commission, in which they alleged thatsince the time when the deeds of trust before mentioned took place ” the claims belong to them, the memorialists, and, if allowed, would go “ absolutely and solely” to them “for the benefit of the creditors.” Neither' Samuel Smith, on his own behalf, nor the firm of Smith & Buchanan preferred a claim to the commission, nor controverted the right and title of the trustees. Moreover, the senior partner of the firm verified the memorial by his own affidavit. Since then nothing has transpired save lapse of time.
Whether lapse of time in such a case should operate to discharge the debts of Smith & Buchanan and divest the legal title to the claim out of the trustees and vest it again in the assignors, so as to enable them or their proper representatives to maintain an action, is a question of law which has been argued with ability arid zeal by the counsel of those representatives. On the other hand, it has been maintained by the counsel for the United States that lapse of time in equitable proceedings, like the present, should not operate to extinguish the just rights of creditors, and that the trustees in any event hold the legal title, and should recover, if any one does, for whom it may concern.
If there were a contesting claimant before the court seeking to recover as the representative of the trustees for the benefit of the creditors, the court would be obliged to pass upon the question definitely by determining which was the proper party *84 to prosecute the claim ; and, if the court bad general equity jurisdiction with power to adjudicate the rights of parties, it would be its duty to have the trustees or their representatives brought in as party defendant, so as to be bound by a final decree ; but the abstract opinion of the court will not determine the rights of parties; and in this proceeding neither trustee nor creditor has appeared to assert a right or to prosecute the claim. The descendants of the original claimants have certainly a contingent if not a direct interest in the indemnity fund, and it would manifestly be a great injustice to them to exclude them from the consideration of Congress because the trustees and creditors of their ancestors have not seen fit to appear and have slept upon their rights or abandoned their trust.
Therefore the court will not by a summary order dismiss the case, but, on the contrary, will spread all of the facts relating to the title upon the record and submit them to the consideration of Congress.
The order of the court is that the findings now filed in these cases be reported to Congress.