## CIRCUIT COURT OF BALTIMORE CITY

Filed February 10, 1892.

CAREY, ET. AL.,
VS.
JOHN D. MORRIS, ET. AL.

*Charles M. Howard* for plaintiff.

*John S. Wirt, Robert Gilmor* and *H. L. Carson* for defendants.

DENNIS, J.—

Samuel Hollingsworth, who was an original "French spoliation claimant," died in 1830, leaving a will duly executed, by which, after making certain specific devises and bequests, he gave all the rest and residue of his property, &c., to his two daughters, Mrs. Cheston, of Baltimore, and Mrs. Gibson, of Philadelphia, and to their heirs, executors, administrators and assigns, to be equally divided, among them as tenants in common.

In 1885 Francis King Carey took out letters of administration d. b. n. c. t. a. upon his estate; and by the Act of Congress known as the General Deficiency Bill for the year ending June 30, 1891," the sum of $3,306.08 was awarded him as such administrator in payment of the claim of the said Hollingsworth under what are known as the "French Spoliation Claims."

Upon the receipt of this money, the administrator filed in this court, a bill in the nature of a bill of interpleader,

setting forth the above facts, and asking the direction of the court as to the proper distribution of the fund. It is claimed on the one side by the residuary legatees under the will of Samuel Hollingsworth, and on the other side by his next of kin living at the time of the appropriation was made.

Whether or not the payment of a what is called a "French Spoliation Claim," under the act above referred to, is to be treated as a mere *gratuity* from the Government of the United States, to the claimant; or as the liquidation of a *debt* due by the government which, while not enforceable by suit under the municipal law, is yet under the broader principles of international law a debt in full legal sense, (except as to its enforceability by suit) and therefore property, (Comegys vs. Vasse, 1 Peters 193), and distributable as assets in the hands of an administrator, and capable of being specifically bequeathed (Williams vs. Heard, 140 U. S. 529), does not seem to me to be an important inquiry in this case.

For, no matter which of these views of the nature of the claim may be adopted, it would seem to be clear that when Congress makes an award and an appropriation for the payment of a claim, the money can only be distributed to those to whom Congress has directed it to be paid. If the real owners of the claim have not been provided for, they must look to Congress for a correction of the wrong, but, when it is simply a question of the distribution of a certain sum which Congress has appropriated to be paid to certain parties, this court is bound to distribute it among those contemplated by the act; and cannot undertake to remedy the supposed injustice and defeat the intention of Congress, by giving it to those not embraced within the designated class of beneficiaries.

Now, in the act referred to, after making the appropriation it is provided "that in all cases where the original sufferers were adjudicated bankrupts, the award shall be made *on behalf of the next of kin instead of assignees in bankruptcy,* and the awards in the cases of individual claimants shall not be paid until the court of claims shall certify to the Secretary of the Treasury that the *personal representatives on whose behalf the award is made represent the next of kin,* and the courts which granted the administrations respectively, shall have certified that the legal representatives have given adequate security for the legal disbursement of the awards."

From this provision it would seem to be clear that Congress intended that the money thus appropriated should go to the next of kin of the original claimant who were living at the time of the appropriation was made, and was not to be considered as belonging to the estate of the original claimant, and consequently assets for the payment of debts, or subject to be disposed of by will in the discretion of the testator. If the money was subject to testamentary disposition by the original claimant, he could have made any person or corporation his beneficiaries, although, in this particular case he named his daughters; and thus the fund might pass to entire strangers in blood, or to charitable or other corporations; and *in any event* would have been liable to his debts, or the debts of his legatees, if any such debts should happen to be alive at the time the award was made. Against this result Congress seems to have carefully guarded by the provision referred to. It certainly implies, if it does not in terms express, an absolute prohibition against the fund passing to creditors *in any event,* a result entirely possible if it is to be considered a subject of testamentary disposition; and the further provision that the court of claims shall certify to the Secretary of the Treasury by whom the money is to be paid "that the *personal representatives in whose behalf the award is made represent the next of kin,"* seems to me to leave no doubt that the award was made to the personal representatives for the purpose of vesting it in the next of kin, and in them alone. Any other construction would defeat the manifest intention of the Act.