Mr. Justice Morris
delivered the opinion of the Court:
The first of the assignments in controversy, which bears the date of December 20,1897, is in the following terms:
“Know all men by these presents, that I, Bernard Campbell, of the city of Washington, D. C., for valuable consideration in money, do hereby ássign an interest of five hundred dollars ($500) in my claim against the Haytian government, said five hundred dollars, with interest, to be paid without charges of any nature when the said claim is paid by Hayti and disbursed by the State Department of the United States.
“The Secretary of State of the United States is hereby authorized and requested to pay said $500, with' interest, to *460 the said James E. Dexter, his order or assigns, when the payment of said claim is received by the State Department of the United States.
(Signed) “Bernard Campbell.”
The one substituted in the place of this, under date of February 17, 1898, is in the following terms:
“Know all men by these presents that I, Bernard Campbell, of the city of Washington, District of Columbia, United States of America, in consideration of one dollar in hand received and other valuable considerations, do hereby assign an interest of ($500) five hundred dollars in the claim of - Bernard Campbell against the government of Hayti, now pending in the Department of State, to James E. Dexter, of the city of Washington, D. 0., said five hundred dollars to be paid without charges of any nature when the said claim is paid by Hayti and disbursed by the State Department of the United States.
“The Secretary of State of the United States is hereby authorized and requested to pay said five hundred dollars to' the said James E. Dexter or order when the money in payment of said claim is received by the State Department of the United States.
“This is to justify a previous one that has been lost.
(Signed) “ Bernard Campbell,
“453 C St., N. W., Washington, D. C.
“Feb. 17th, 1898.”
The second assignment, bearing the date of March 18, 1898, is in the identical language of the substituted one of February 17, 1898, with the exception that it omits the last line.
That all these -assignments are in contravention of the rule of the common law that a claim of compensation for a tort, such as an assault and battery, can not validly be assigned, is not an open question. To that effect are the cases of Comegys v. Vasse, 1 Peters, 193; Howard v. Crowther, *461 8 Meeson & Welsby, 603, and numerous other cases, many of which will be found cited and collated in the American and English Encyclopedia of Law, Yol. 2, p. 1017, all of which hold with great unanimity, that, in the absence of statute authorizing such assignment, “ mere personal torts, which die with the party and do not survive to his personal representatives, are not capable of passing by assignment.” This general doctrine is not controverted in the present case; but the contention is, that here the money advanced and paid for the assignments, which was only $50 for each, or $100 in all, was advanced for a meritorious purpose, namely, to enable the appellant to support himself while he was-prosecuting his claim; and that, while the assignments may not be valid at common law, they will be supported in equity.
It is true, of course, that a contract, such as an assignment of a chose in action, may in proper cases be enforced in a court of equity when it could not be sustained in a court of common law; and that a possibility or an expectancy may be validly transferred in equity, when a court of common law would decline to recognize the transfer. It may be that the doctrine of equity in this connection has been as well stated by Lord Chancellor Westbury, in the case of Holroyd v. Marshall, 10 H. L. Cases, 189, as in any other adjudicated case. He said: “If a vendor or mortgagor agrees to sell or mortgage property, real or personal, of which he is not possessed at the time, and he receives the consideration for the contract, and afterwards becomes possessed of property answering the description in the contract, there is no doubt that a court of equity would compel him to perform the contract, and that the contract would in equity transfer the beneficial interest to the mortgagee or purchaser immediately on the property being acquired. This, of course, assumes that the supposed contract is one of that class of which a court of equity would decree the specific performance. If it be so, then immediately on the *462 acquisition of the property described the vendor or mortgagor would hold it in trust for the purchaser or mortgagee, according to the terms of the contract. For, if the contract be in other respects good and fit to. be performed, and the consideration has been received, incapacity to perform it at the time of its execution will be no answer when the means of doing so are afterwards obtained.”
The question, therefore, arises in all such cases whether the contract, in the language of Lord Westbury, is one fit to be performed, or of which a court of equity would decree the specific performance; and that question'compels our consideration in the present instance. What was the contract in the present case ? And what was the consideration moving from the appellee to the appellant upon which the assignments were made? It is conceded that no more than the sum of one hundred dollars was paid by the appellee for the assignments; and if this consideration, being merely one dollar for ten, be not grossly inadequate in view of the doubtful nature of the claim, and if the claim itself, being one for a personal tort, be not incapable of assignment, yet it is clear that the contract was champertous, and therefore not fit to be performed either at common law or in equity.
The appellee claims that the money was advanced by him to the appellant for the purpose of enabling the latter to have the necessaries of life while prosecuting his claim, and that this was a meritorious purpose. If the advance had been a loan, for which the assignments were taken as a security,-as the appellant claims, there might be some plausibility in this theory of the appellee. But the appellee claims at the same time that the transaction was simply one of bargain and sale, of which the appellee took the risk and out of which he intended to make a profit; and it is not apparent, therefore, how the purpose to which the appellant applied the money could be regarded as in any manner affecting the character of the transaction. What the true character of the transaction was is fully evidenced by the *463 effort of the appellee to seek out the appellant as far back as October 4, 1897, when he wrote a letter to the appellant, in which he very plainly contemplated to get an interest in the claim, and in which he stated that he had “been making strong efforts to have the claim pushed.” We may presume this statement to have been true, and it receives corroboration from the intimacy of the appellee with some of the officials of the State Department, who seem to have kept him quite fully advised of the progress of the claim. Coupling this assertion with the fact that the appellee soon afterwards sought out the appellant in New York or Brooklyn with special reference to the claim, and with the further fact that in a short time thereafter, and precisely as the prospects for the allowance of the claim by Hayti became brighter, he procured the assignments from the appellant, we can scarcely entertain a doubt that the appellee purchased his interest in the claim upon the champertous consideration of using his personal influence in its prosecution. Unless, therefore, we are prepared to disregard or ignore the statutes against champerty and maintenance, — and we have held that those statutes are yet in force in the District of Columbia (Johnson v. Van-Wyck, 4 App. D. C. 294; Peck v. Heurich, 6 App. D. C. 273), — we must regard them as applicable to the present case,' and as rendering the contract or contracts between the parties, in the language of Lord Westbury, as “one not fit to be performed.”
We are of opinion, therefore, that the assignments in controversy are null and void, and ineffectual to convey to the assignee the interest which he claims.
But, as it is clear from the record that the appellant is indebted to the appellee for various sums of money advanced to him on the faith of payment out of this claim when it should be realized, and for room rent, and perhaps on some other accounts; and as the appellant, in order to entitle himself to be relieved in equity from these assignments, should do equity by the payment of the amount of *464 his indebtedness, which in fact upon the record he offers his willingness to do, the assignments should not be decreed to be canceled except upon the condition of the payment of such indebtedness. It would seem not to be difficult to determine the amount of this indebtedness. But if the parties can not agree between themselves as to this, the cause should be referred to an auditor to ascertain such amount, whereupon the appropriate decree may be entered.
The decree appealed from will be reversed, with costs; and the cause will be remanded to the Supreme Court of the District, with- directions to vacate such decree, and for further proceedings in accordance with this opinion. And it is so ordered