Benjamin SPURGEON, Plaintiff in Error,

v.

Laura Belle Howland COATE, Stephen Howland, and Alma Lee Yoacam, Defendants in Error.

No. 38303.

Supreme Court of Oklahoma.

March 17, 1959.

Lester R. Maris, Ponca City, for plaintiff in error.

C. D. Northcutt, of Northcutt & Northcutt, Ponca City, for defendants in error.

BERRY, Justice.

Prior to 1902, Laura Alice Pappan, a white woman, hereafter referred to as "Mrs. Pappan", married Stephen Pappan, a Kaw Indian. Of the marriage one son, Louis Pappan, and five daughters were born. Stephen Pappan and Louis Pappan each received a Kaw allotment. Louis Pappan died intestate in 1912. Stephen Pappan died intestate in 1913. As an heir of Louis Pappan and Stephen Pappan, Mrs. Pappan inherited a substantial interest in Louis Pappan's allotment..

Mrs. Pappan died testate in 1936. She was survived by three daughters and several grandchildren who were also the daughters and grandchildren of Stephen Pappan. Her last will which is dated March 11, 1932, reads in part as follows:

"(2) I give and devise to my daughter, Mary Josephine Howland, all of

my undivided interest in the homestead allotment of my deceased son, Louis Pappan, the same being the northeast quarter (NE/4) of section twenty-seven (27), township twenty-seven (27) North, range four (4) east of the Indian Meridian, in Kay County, Oklahoma, and to my said daughter, Mary Josephine Howland, I give and bequeath all the rest, residue and remainder of the property of which I may die seized, both real, and personal, to be hers absolutely.

"(3) I make no provision in this, my last will and testament, for my daughters, Debbie Penisten and Rose Lee Suskey; and my grandsons, Christopher Long and Sylvester Long, children of my deceased daughter Amelia Long; and my granddaughters, Lillie Guthrie, Alice Cunningham and Ellen Suskey, and my grandson Ben Spurgeon, children of my deceased daughter, Lydia Spurgeon, for the reason that I have hereto sufficiently provided for my said daughters and grandchildren."

Prior to her death, Mrs. Pappan deeded the real estate referred to in her will to Mrs. Howland who was one of her daughters, and since she left no other property excepting a claim to the funds in controversy, her will was not offered for probate until after the funds in controversy came into being after her death.

Following Mrs. Pappan's death, the Kaw Tribe of Indians filed a claim against the United States with the Indian Claims Commission and successfully prosecuted said claim. By an Act of Congress, under date of August 9, 1955 (69 Stat. 559), distribution of the proceeds of the claim to "members of the Kaw Tribe of Indians whose names appear on the roll prepared pursuant to Act of July 1, 1902 (32 Stat. 636)" or their "heirs or devisees" was provided for. The pertinent provisions of the referred-to Act read as follows:

"The Secretary of the Interior is authorized and directed to distribute equally among the members of the Kaw Tribe of Indians whose names appear on the roll prepared pursuant to the Act of July 1, 1902, (32 Stat. 636), and the persons who were allotted under the Act of April 29, 1922, (42 Stat. 1589), all funds on deposit in the Treasury of the United States to the credit of the Kansas or Kaw Tribe of Indians, including funds appropriated by the Act of April 22, 1955, (69 Stat. 28), for the payment of a judgment against the United States. The share of any deceased member shall be distributed among his heirs or devisees. Approved August 9, 1955."

As a result of enactment of the referred-to Act, probate proceedings were instituted before the Department of the Interior in connection with the estate of Louis S. Pappan and the estate of Stephen Pappan. It appears that the Department of the Interior found that although the funds arising out of the aforementioned claim did not come into existence until appropriated by Congress in 1955, the right of Louis Pappan and Stephen Pappan as Kaw allottees arose as an incident to their allotments and the right of Mrs. Pappan as their heir to share in said funds existed at the time of her death in 1936. And having so found, the Secretary of the Interior refused to exercise jurisdiction over funds in which Mrs. Pappan, a white woman, had an interest.

The parties accept as a premise the proposition that the property in controversy upon Mrs. Pappan's death, was either transferred under the laws of descent and distribution to her heirs at law (this is plaintiff in error's contention), or was transferred under her will to Mary Josephine Howland, her daughter and residuary legatee (this is defendants in error's contention). We, for the purpose of reaching a decision herein only, accept said premise as correct.

In holding for the defendants, the trial court found that "the claim of the Kaw Indians was a claim for payment of the rea-

sonable value of certain lands claimed by the Kaw Indians and appropriated by the Government of the United States; that the interest of the deceased, Alice Pappan Burnett, was acquired by her through inheritance from a deceased son who died intestate in 1912, and from the estate of her deceased husband, Stephen Pappan, who died intestate in 1913; that Alice Pappan Burnett was a white woman and not of Indian Blood; * * * that the allowance of a claim of the Kaw Indian Tribe was the recognition of the indebtedness owing to said tribe by reason of the appropriation of land by the United States Government claimed by the Kaw Tribe of Indians, and was a claim in existence but unenforceable from date of appropriation of said land; that the claim was in existence on the date of the death of the deceased, Alice Pappan Burnett; that she had an interest in said claim by reason of inheritance from her deceased son and deceased husband."

Plaintiff in error cites Otoe and Missouria Tribe of Indians v. United States, 131 F.Supp. 265, 131 Ct.Cl. 593, as conclusively establishing that the claim of the Kaws "was not a legal right or claim either at the time of executing the will or at the date of" Mrs. Pappan's death. Plaintiff in error therefore contends that Mrs. Pappan's will conferred no right to the funds in controversy because she owned no interest in said funds at the time of her death; that Mrs. Pappan's will reflects that she did not consider that she owned an interest in the funds; that the estate of Mrs. Pappan is not an entity capable of taking the funds; that the petition to probate the will should be dismissed for the reason no assets exist.

■ The only evidence introduced relative to the basis of the claim made by the Kaw Tribe of Indians is the testimony of an attorney for said Tribe. He testified in substance that in making the aforementioned appropriation, Congress was paying the Kaws for land taken from them without just compensation; that under an 1815 Treaty between England and the United States [8 Stat. 218], the United States agreed to give "land back" to the Kaws that

the Kaws had held prior to the War of 1812; that in 1825 the United States agreed to give the Kaws $75,000 for 45,000,000 acres of land and failed to make payment; that the rights of the Kaws was based upon the Allotment Act of 1902. This testimony tends to establish the correctness of the trial court's findings (and that of the other tribunals which have passed on the issue under consideration), to the effect that the claim of the Kaws was allowed in recognition of an indebtedness owing them by reason of the United States appropriating their land, and that the claim therefore existed from date the land was appropriated.

In our opinion the findings and judgment of the trial court is sustained by the evidence and is not contrary to law.

■ Beginning at p. 86, Vol. 3, Page on Wills, Lifetime Ed., the author states that "In order to avoid partial intestacy, the general rule is that a general residuary clause should be construed liberally so as to pass all of testator's estate which is not otherwise disposed of. A residuary clause passes all of testator's property; and all of his interests in property, not otherwise disposed of effectively, and not excepted from the operation of such clause, pass. Its effect is not limited to property in which testator has a legal estate; but it also includes property in which he has an equitable interest. Unless a contrary intention appears from the will, its effect is not limited to property in which testator has an interest in possession, but includes property in which he has interests in expectancy."

In speaking of the scope and effect of a residuary clause, the author of 96 C.J.S. Wills § 799, p. 223, has this to say:

"The test of the power of a residuary clause to carry property is whether the property belonged to the testator and not whether he knew that it was his; and one of the functions of a residuary clause is to dispose of such things as the testator may have forgotten or overlooked or his possession of which may have been unknown to

**736**

him. Thus, it is no ground for excluding property from a residuary clause that the testator did not know or believe that he had title to it."

We pointed out In Matter of Estate of He-Ah-To-Me, Okl., 325 P.2d 746, 750, that "the residuary clause of a will must be construed so as to prevent intestacy 'as to any part of the testator's estate unless there is an apparent intention that the property should be excluded from the will'".

The applicable statute, 84 O.S.1951 § 166, which reads as follows, is in keeping with the general rule that unless otherwise indicated in a will containing a residuary clause, the clause serves to transfer all property not mentioned in the will in which testator had an interest:

"A devise of the residue of the testator's real property passes all the real property which he was entitled to devise at the time of his death, not otherwise effectually devised by his will."

We are of the opinion that if an appropriation is made in order to satisfy an unenforceable claim arising out of the taking of property (unenforceable only because the sovereignty was not originally amenable to suit), the appropriation will not be deemed a gratuity or donation and as such without the residuary clause of a will of a deceased person, who was entitled to take or share in the appropriation. Comegys v. Vasse, 1 Pet. 193, 26 U.S. 193, 7 L.Ed. 108; Williams v. Heard, 140 U.S. 529, 11 S.Ct. 885, 35 L.Ed. 550, and Camp v. Vaughan, 119 Ga. 131, 46 S.E. 79.

This is not a case involving a devise to an estate and for said reason authority cited by plaintiff in error treating with the proposition that a devise to an estate is void is without application.

No Oklahoma case exactly in point has been called to our attention and we have been unable to find one. We are, however, of the opinion that under the cited authorities, and for reasons herein given, the judgment of the trial court should be and same is affirmed.