BURTHE *v.* DENIS.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 1381. Submitted January 13, 1890. — Decided March 3, 1890.

The property of a subject of the Emperor of the French in Louisiana was occupied by the army of the United States during the war of the rebellion. A claim for the injury caused thereby was adjusted by the commanding general, but payment was refused in consequence of the passage of the act of February 21, 1867, 14 Stat. 397, c. 57. After the organization of the commission under the Claims Convention of 1880 with France, 21 Stat. 673, his executor (he having meantime died in Paris leaving a will distributing his estate) presented this claim against the United States to the commissioners, and an allowance was made which was paid to the executor. In settling the executor's accounts in the courts of Louisiana two of the legatees, who were citizens of France, laid claim to the whole of the award. The other legatees, who were citizens of the United States, claimed the right to participate in the division of this sum. The award of the commission being silent on the subject, the briefs of counsel on both sides before the commission together with letters from the claimants' counsel, and a letter from one of the commissioners, were offered to show that only the claims on the part of the French legatees were considered by the commission, and the evidence was admitted. The Supreme court of Louisiana ordered the award to be distributed among all the legatees, French and American; *Held,*

(1) That this court had jurisdiction to review the judgment of the state court;

(2) That the French legatees only were entitled to be represented before the commission, and they only were entitled to participate in the distribution;

(3) That the briefs of counsel were properly admitted in evidence;

(4) That the letters of counsel and of the commissioner should have been rejected; but,

(5) That it was immaterial whether the evidence was or was not received, as the decision of the question depended upon considerations which such evidence could in no way affect.

Extrinsic evidence to aid in the interpretation of the judgment of a court or commission is inadmissible unless, after reference to the pleadings and proceedings, there remains some ambiguity or uncertainty in it.

AT the commencement of the late civil war L. F. Foucher, a citizen of France and a resident of the city of Paris, and bearing the title of Marquis de Circé, was the owner of a plantation situated on the east bank of the Mississippi River, a few miles above the centre of the city of New Orleans, though within its corporate limits. A portion of it was known as Exposition Park or Audubon Park. When the city was occupied by the Federal troops in 1862 they took possession of the plantation. Some of its fields were used for pasture; some were converted into camping ground; and upon part a hospital for the soldiers was built. The whole was in the military occupation and control of the United States, to the entire exclusion of the owner. In 1865 a claim for reimbursement of the damages sustained was presented on behalf of the owner to the Military Claims Commission sitting at New Orleans. General Canby, as commanding general of the district embracing that city, and the head of the commission, made a report upon the claim, recommending, upon the advice of his chief quartermaster, its settlement by the payment of $36,433.33. This report was addressed to the Adjutant General's Department, and forwarded to Washington in June, 1866. No part of this claim, was, however, paid, for the reason, as stated by counsel, that before action was had upon it the act of Congress of February 21, 1867, was passed, forbidding the settlement of any claim for the occupation of or injury to real estate by the military authorities or troops of the United

States where such claim originated during the war. 14 Stat. 397, c. 57.

In 1869 Foucher died, leaving a will, in which he made his widow, also a citizen of France, his universal legatee, and she was put in possession of his estate. In 1877 she died, leaving a will by which she devised her entire estate to her nephews and nieces, who were appointed her universal legatees, jointly. After some litigation to determine the true construction of this will, the legatees went into possession of her estate. 31 La. Ann. 568. The estates both of Foucher and of his widow were settled and the property distributed among the legatees of the latter or their heirs. The executors were discharged and the successions considered as finally closed. Neither the estate of Foucher nor of his widow had received any moneys upon the claim which had been presented on behalf of Foucher in 1865, for the damage sustained by the occupation and use of his plantation by the Federal troops, the payment of which had been recommended by General Canby; nor was any mention made of the claim in the distribution of the estate of either.

In January, 1880, a convention was concluded between the United States and France, 21 Stat. 673, by which it was agreed that "all claims on the part of corporations, companies, or private individuals, citizens of the United States, upon the government of France, arising out of acts committed against the persons or property of citizens of the United States not in the service of the enemies of France, or voluntarily giving aid and comfort to the same, by the French civil or military authorities, upon the high seas or within the territory of France, its colonies and dependencies, during the late war between France and Mexico, or during the war of 1870–'71, between France and Germany, and the subsequent civil disturbances known as the 'Insurrection of the Commune;' and on the other hand, all claims on the part of corporations, companies or private individuals, citizens of France, upon the government of the United States, arising out of acts committed against the persons or property of citizens of France not in the service of the enemies of the United States, or voluntarily giving aid and

comfort to the same, by the civil or military authorities of the government of the United States, upon the high seas or within the territorial jurisdiction of the United States, during the period comprised between the thirteenth day of April, eighteen hundred and sixty-one, and the twentieth day of August, eighteen hundred and sixty-six, shall be referred to three commissioners, one of whom shall be named by the President of the United States, and one by the French government, and the third by His Majesty the Emperor of Brazil." The convention also provided that the commission thus constituted should be competent and obliged to examine and decide upon all claims of the above character presented to them by the citizens of either country, except such as had been already diplomatically, judicially or otherwise by competent authorities previously disposed of by either government; but that no claim or item of damage or injury based upon the emancipation or loss of slaves should be entertained. The convention also provided that the commission should, without delay, after its organization, proceed to examine and determine the claims specified, and that the concurring decisions of the commissioners or of any two of them should be conclusive and final; and the contracting parties especially engaged so to consider them, and to give full effect to such decisions, without any objections, evasions, or delay whatever.

The commission thus provided for was organized and proceeded to the hearing of claims at the city of Washington. The claim of Foucher was for acts committed against his property within the period prescribed, and the parties interested in that claim were desirous of presenting it to the commission for consideration. That commission, as it was authorized to do under the act of June 16, 1880, providing for carrying the treaty into effect, had adopted rules for the conduct of its business, among which was one that, if the claimant were dead, his executor or administrator, or legal representatives, must appear for him, and that each claimant should file in the office of the commission a statement of his claim, in the form of a memorial addressed to the commission. 21 Stat. 296, c. 253, § 4. The successions of Mr. and Mrs. Foucher were

accordingly reopened, and Arthur Denis was appointed dative testamentary executor in both, that is, an executor to take the place of the one named in the wills of the deceased.

Soon afterwards Mr. Denis filed in the office of the commission a memorial entitled " Arthur Denis, dative testamentary executor of Foucher *vs.* The United States." In this memorial he presented the claim in the right of Foucher, deceased, and joined with him as claimants all parties interested in the successions of Mr. and Mrs. Foucher, all of whom were citizens of the United States, except Paul Louis Burthe and Dominique François Burthe, who were citizens of France; and he filed a power of attorney showing that he appeared as their agent. Subsequently these latter parties filed a separate petition or memorial, in which they appeared in person. They are heirs each of one-eighth of the estate of Mrs. Foucher.

In June, 1883, the commission rendered its award as follows:

" Arthur Denis ⎫
       *vs.*     ⎬ No. 603.
The United States. ⎭

" We allow this claim at the sum of nine thousand and two hundred dollars, with interest at five per cent from April 1st, 1865."

Of this award Mr. Denis collected $8229.18, from which he reserved $114.98 for future costs, and deducted $2834.20 for charges and expenses, which are conceded to have been correct, leaving a balance of $5280. This sum as dative executor he proposed to distribute among all the heirs and legatees of Mrs. Foucher precisely as he would have done had this amount been moneys possessed by her as part of her estate at the time of her death. All the parties, except the plaintiffs in error, are citizens of the United States, and were such citizens at the time of the award. The plaintiffs in error being the only heirs who were at the time citizens of France, insisted that they were entitled to the whole award. Mr. Denis presented the matter to the Civil District Court for the Parish of Orleans for determination, showing the respective proportions the heirs and legatees would be entitled to receive if the sum

mentioned was to be distributed among them in the same proportion as the original estates. Accompanying this showing—tableau of distribution as it is termed—he made the following statement:

"The undersigned, testamentary executor, understands that the French and American Claims Commission established the uniform jurisprudence for its decisions that it could not hear and determine any claims against the United States except those of claimants and beneficiaries who were French citizens, and that the said commission rejected all claims of persons not French citizens, even when they represented the claim of a deceased French person.

"In claim No. 603, of the succession of L. F. Foucher de Circé, the actual claimants are all American citizens except Paul Louis Burthe and Dominique François Burthe, who are French citizens. Under the said jurisprudence of the commission, and considering the status of the American claimants, the executor felt great doubt and hesitation as to the distribution to be made under this tableau. On the one hand it seemed as if the commission, under its rulings, could not have made any award in favor of the American claimants, and that the award as allowed must have been intended for the French claimants only; but, on the other side, the commission not having in express terms excluded the American claimants, the executor concluded, in making the tableau, to allow to the several legatees their recognized proportions of interest in the estates, leaving the French heirs to come by oppositions and assert their rights, if any they have, to the entire award."

To this representation, or tableau of distribution, the plaintiffs in error made opposition, alleging that they were entitled to the whole award, being the only heirs and legatees who were French citizens at the time the claim was presented and when the award was rendered; and that no award under the treaty could have been made in favor of the other heirs and legatees, they being citizens of the United States at that time, and that no executor, administrator or person representing the succession of a person who was not a French citizen at the time the damage was suffered and award rendered could have

any standing before the commission. The District Court of the parish, the court of original jurisdiction, maintained the position of the plaintiffs in error, and decreed that the entire fund, $5280, should go to them, one-half to each. From this judgment the executor appealed to the Supreme Court of Louisiana, which tribunal reversed the decree below, giving judgment in favor of the executor, to the effect that the entire fund in his possession from the award, less the charges and expenses incurred and the amount retained for future costs, should be distributed proportionally among the legatees and heirs of Mrs. Foucher, according to the tableau of distribution presented by him. From this latter judgment the case was brought to this court on writ of error.

*Mr. Alexander Porter Morse*, (with whom was *Mr. Charles Carroll* on the brief,) for plaintiffs in error.

*Mr. Henry Chiapella* for defendants in error.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

As the contention of the plaintiffs in error that they are entitled to the entire award rendered by the French and American Claims Commission, after deducting from it the conceded charges and expenses, is founded upon the stipulations of the treaty of 1880, the refusal of the Supreme Court of Louisiana to recognize the right thus asserted by them presents a question for the jurisdiction of this court, within the express terms of the 25th section of the Judiciary Act of 1789, which is reproduced, somewhat enlarged in its provisions, in the Revised Statutes, § 709. The decision was against the right specially claimed under the treaty in question.

The position of the plaintiffs in error was, in our judgment, well taken, and should have been sustained. Independently of the express provisions of the treaty it could not reasonably be urged that the award should inure to the benefit of citizens of the United States. It would be a remarkable thing, and we think without precedent in the history of diplomacy, for

the government of the United States to make a treaty with another country to indemnify its own citizens for injuries received from its own officers. To any suggestion of that kind from a foreign country the government of the United States would probably answer that it was entirely competent to deal with its own citizens and to do justice to them without the interposition of any other country.

But the express language of the treaty here limits the jurisdiction of the commission to claims by citizens of one country against the government of the other. It matters not by whom the claim may have been presented to the commission. That body possessed no authority to consider any claims against the government of either the United States or of France, except as held, both at the time of their presentation and of judgment thereon, by citizens of the other country.

There is no ambiguity in the language of the treaty on this subject; it is entirely free from doubt. It is true Arthur Denis presented the claim as dative testamentary executor of Mr. Foucher's succession, and he joined, in his memorial to the commission, all the legatees and heirs under the will of Madame Foucher, to whom the estate of her husband had been left, appearing also for the plaintiffs in error under a power of attorney from them, they subsequently appearing in person. This memorial only gave the commission full knowledge of the origin and condition of the claim. It could not enlarge its power or bring within its jurisdiction any claim against the United States of other parties than citizens of France. When the award was made it could lawfully be intended for no other than such citizens. The right of the plaintiffs in error to the award arises from the treaty, to which any rules for the distribution of estates under the law of Louisiana must give way, the treaty being of superior authority in the case. They were entitled, each to one-eighth of any property coming to them as legatees of Mrs. Foucher, and that proportion of the whole claim shown to exist against the United States for damages to the property of her husband and for its use was all that the commission could allow, as it could not consider the interests of their co-legatees or co-heirs,

they not being citizens of France. The amount of the whole claim as set forth in the memorial presented by Denis exceeded $100,000. The amount which General Canby, in 1865, recommended to be paid, as already stated, exceeded $36,000. Whatever the damages sustained by Foucher as estimated by the commission, that body could allow only one-fourth thereof, the proportion due to the plaintiffs in error. Any award to their co-legatees would have been invalid and void. They may be entitled to an equal share in the whole claim against the government of the United States; but if so they must resort to remedies provided by the laws of the United States for the prosecution of claims against them, or, if those remedies are inadequate to give this relief, they must apply to Congress. Relief by the commission under the treaty could be given only to those legatees who were at the time citizens of France.

On the hearing before the District Court, the brief of counsel for the French government, and of private counsel filed with the commission for the claimants, and letters of the latter counsel, were produced to show that no claim was pressed by them except on behalf of the plaintiffs in error; and also a letter of one of the commissioners, to show that no other claim was considered by the commission. Objection was taken to this evidence on the ground that the decision of the commission could not be interpreted by subsequent testimony, or by the arguments of counsel before it, or the opinions of attorneys employed in the case. As we understand the objection, it went to the competency of the testimony, rather than to its sufficiency. As a general rule, the judgment of a court or commission is to be interpreted by its own language and the pleadings or proceedings upon which it is founded. Extrinsic evidence to aid in its interpretation is inadmissible unless after reference to the pleadings and proceedings there remains some ambiguity or uncertainty in it. In such cases resort may be had to other evidence, as where, from the generality of the language in the pleadings, or proceedings as well as in the decision, it becomes necessary to ascertain and limit the extent of the judgment intended. Thus where a former judgment is pleaded in bar of a second action upon the same demand, it is

competent to show by extrinsic evidence the identity of the demands in the two cases, if this does not appear on the face of the pleadings. *Washington, Alexandria & Georgetown Steam Packet Co.* v. *Sickles,* 24 How. 333 ; *Miles* v. *Caldwell,* 2 Wall. 35 ; *Cromwell* v. *County of Sac,* 94 U. S. 351, 355.

If it had been necessary to limit the effect of the award of the commission in the present case, we do not perceive any valid objection to extrinsic evidence for that purpose. The brief of counsel for the claimants would show the character and extent of their contention before that body. But letters of counsel and the letter of one of the commissioners can hardly be considered as competent evidence. Their declarations, if receivable at all, could only be so in the form of testimony given by them as witnesses in the case, and not in any *ex parte* written communication. But, though received as evidence, they could not have had any effect upon the decision as to the claim of the plaintiffs in error. Their claim rested on the treaty, which authorized no award in favor of any other parties before the commission. It is therefore immaterial that such evidence was received. The nature and extent of the award, and the parties entitled to it, depended upon considerations which such evidence could in no way affect.

It follows that the judgment of the Supreme Court of Louisiana must be

*Reversed and the cause remanded, with directions to take further proceedings in accordance with this opinion; and it is so ordered.*