## STANDARD MARINE INS. CO., Limited, v. WESTCHESTER FIRE INS. CO.

No. 65.

Circuit Court of Appeals, Second Circuit.
Dec. 6, 1937.

Cabell, Ignatius & Lown, of New York City (Hartwell Cabell, Milton B. Ignatius, Wendell P. Barker, and Lauson H. Stone, all of New York City, of counsel), for appellant.

Bigham, Englar, Jones, & Houston, of New York City (Oscar R. Houston, D. Roger Englar, Paul H. Lacques, and P. J. Kooiman, all of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff is a British insurance corporation which seeks to share in an award against Germany made by the Mixed Claims Commission (United States and Germany) in favor of the United States on behalf of the defendant, an American insurance corporation.

During the period of the World War: (a) The plaintiff from time to time reinsured certain marine and war risk insurances and reinsurances which had been underwritten by defendant as insurer or reinsurer and by the terms of the contracts of reinsurance plaintiff became bound to accept the adjustments made by the defendant and to pay accordingly. (b) The defendant reinsured certain marine and war risk insurances and reinsurances which had been underwritten by plaintiff as insurer or reinsurer, the contracts being in substantially the same form as those described in (a), supra. (c) The plaintiff and defendant also insured and reinsured identical property under identical risks by contracts of marine and war risk insurance and reinsurance. The underwriters paid the losses for which they were liable to their assured in cases (a), (b), and (c).

The Mixed Claims Commission was organized and has acted pursuant to an Executive Agreement between the United States and Germany dated August 10, 1922 (42 Stat. 2200), the terms of which were based upon the treaty of peace between the United States and Germany known as the Treaty of Berlin (42 Stat. 1939). That treaty conferred certain rights in favor of the United States of America, as a nation and on behalf of persons owing permanent allegiance to it. The award here concerned only recoveries by the United States for injuries to one of its nationals. Each of the Allied and Associated Powers, however, was to obtain similar redress for injuries to its nationals under the terms of the Treaty of Versailles.

The Treaty of Berlin provided in article 1 (42 Stat. 1942) that: "Germany undertakes to accord to the United States, and the United States shall have and enjoy, all the rights, privileges, indemnities, reparations or advantages specified in the aforesaid Joint Resolution of the Congress of the United States of July 2, 1921, including all the rights and advantages stipulated for the benefit of the United States in the Treaty of Versailles."

The Joint Resolution of July 2, 1921, "reserved to the United States of America and its nationals any and all rights, privileges, indemnities, reparations, or advantages, together with the right to enforce the same * * * which, under the treaty of Versailles, have been stipulated for its or their benefit." 42 Stat. 105, § 2.

The Joint Resolution also provided for retention by the United States of all seized German property, "until such time as the Imperial German Government and the Imperial and Royal Austro-Hungarian Government, or their successor or successors, shall have respectively made suitable provision for the satisfaction of all claims against said Governments respectively, of all persons, wheresoever domiciled, who owe permanent allegiance to the United States of America and who have suffered, through the acts of the Imperial German Government, or its agents, or the Imperial and Royal Austro-Hungarian Government, or its agents, since July 31, 1914, loss, damage, or injury to their persons or property, directly or indirectly * * * in consequence of hostilities or of any operations of war, or otherwise." 42 Stat. 106, § 5.

Under section 232 of the Treaty of Versailles incorporated by reference in the Treaty of Berlin, Germany undertook "that she will make compensation for all damage done to the civilian population of the Allied and Associated Powers and to their property during the period of the belligerency of each * * *".

Under Annex I of the Treaty of Versailles it was provided that:

"Compensation may be claimed from Germany under Article 232 above in respect of the total damage under the following categories: * * *

"(9) Damage in respect of all property wherever situated belonging to any of the Allied or Associated States or their nationals, with the exception of naval and military works or materials, which has been carried off, seized, injured or destroyed by the acts of Germany or her allies on land, on sea or from the air, or damage directly in consequence of hostilities or of any operations of war."

The obligations of Germany under the treaty, to be determined by the Commission, were defined in the Executive Agreement as follows:

### Article I.

"The commission shall pass upon the following categories of claims which are more particularly defined in the Treaty of August 25, 1921, and in the Treaty of Versailles."

Section (1) deals with damage to the property of American citizens in Germany and is not here material..

"(2) Other claims for loss or damage to which the United States or its nationals have been subjected with respect to injuries to persons, or to property, rights and interests * * * since July 31, 1914, as a consequence of the war." 42 Stat. 2200, art. 1, §§ 1, 2.

It is evident from the foregoing that jurisdiction of the Commission so far as the parties to this suit are concerned extended only to the making of awards against Germany for damages suffered by American nationals. The Commission has uniformly so interpreted the treaty and it made the award to the defendant herein upon that basis.

·The Commission awarded defendant about 83 per cent. of all sums it had paid out on contracts which had been reinsured by the plaintiff, and arrived at the amount of the award by deducting all sums it had received from the plaintiff, a foreign corporation, reinsuring its risk. The award also included about 83 per cent. of all sums paid by the defendant to the plaintiff under contracts of insurance or reinsurance ceded to the defendant by the plaintiff as reassured. The award further included about 83 per cent. of all sums paid by the defendant in respect to contracts of insurance or reinsurance which were concurrent or made in conjunction with similar contracts entered into by the plaintiff covering the same properties, interests, and risks. The total

amount awarded to the defendant was $1,396,881.41.

The defendant filed a claim with the Commission which included the amounts paid by it as insurer and paid to it by the plaintiff and other foreign reinsurers, which latter amounts the Commission did not allow. The plaintiff and other foreign reinsurers also filed claims for their losses which the Commission rejected. The plaintiff's own sovereign did not recover or seek to recover anything on its behalf or make any payments on account of the claims which it is seeking to assert here. The British government did set aside £5,000,000 out of its reparation receipts from Germany, collected under the provisions of the Treaty of Versailles, for the purpose of making ex gratia grants to British nationals in respect of damages caused by enemy action during the World War. A Commission appointed by that government to make recommendations as to the distribution of the £5,000,000 advised that claims for damage to property could only arise on the part of the owner of the property and that payments to an insured by underwriters did not constitute the sort of damage contemplated by the Reparation Chapter of the Treaty.

The plaintiff seeks an accounting upon the theory that the defendant received its award as trustee for its reinsurers and coinsurers. A part of the recovery sought was included in the amount rejected by the Commission in the case of the claim presented by the defendant. All of the recovery sought was included in the claim presented by the plaintiff which was also rejected by the Commission. Judge Knox on final hearing dismissed the bill and from the decree entered upon his decision the present appeal was taken.

■ It is perfectly true that in the ordinary case, where claims by sovereigns are not involved, reinsurers and coinsurers who recover from a tort-feasor money which they have paid to an insured must share pro rata in the recovery, i. e., must share to the extent of their respective risks. Standard Marine Ins. Co. v. Assur. Co., 283 U.S. 284, 287, 51 S.Ct. 371, 372, 75 L.Ed. 1037; Federal Ins. Co. v. Detroit Fire & Marine Ins. Co., 202 F. 648 (C.C.A.6); Assicurazioni Generali v. Empress Assurance Co., (1907) 2 K.B. 814. But here the recovery was by a sovereign, the United States of America. By the Treaty of Berlin this sovereign was pre-

cluded from recovering on behalf of underwriters that were not its own nationals. The ordinary doctrines affecting the interrelated rights and duties among insurers, reinsurers, and coinsurers which have been created by courts of equity to do justice break down where the remedy afforded to one against whom contribution is sought is limited, as it was here, to recovering a fund that represents only its own out-of-pocket expense. A recognition of the right to the accounting sought by the plaintiff would require domestic underwriters to share with foreign underwriters the limited awards they could obtain under the treaty, though the sovereigns of the latter have made no attempt to contribute to the total recovery and the defendant was never in a position where it could obtain such a recovery on behalf of all parties interested. A right to enforce such a recovery ought in justice to exist before the equitable doctrines applicable in ordinary cases should be applied.

In Burnand v. Rodocanachi, 7 App.Cas. 333, underwriters had paid to owners of cargo losses occasioned by the destruction of the cargo by the Confederate Cruiser Alabama to the amount of a valued policy. The United States, out of a compensation fund created by a treaty between the United States and Great Britain and distributed under an Act of Congress, made an award to the cargo owners consisting of the difference between the real total loss and the sum received from the underwriters, which award was paid to the cargo owners. The underwriters sued the latter to recover the payment claiming that it properly belonged to them. The House of Lords held that they could not recover for the reason that Congress had made the award for the benefit of persons uninsured or underinsured and had plainly provided that underwriters should not receive any benefit from the funds distributed. The court laid stress upon the fact that the disposition of the award was wholly within the control of the United States as sovereign and that it was the evident intention of Congress to benefit only the insured and not their underwriters.

The decision of the Supreme Court in Williams v. Heard, 140 U.S. 529, 11 S.Ct. 885, 35 L.Ed. 550, on which the plaintiff greatly relies, is not thought to be opposed to Burnand v. Rodocanachi, 7 App.Cas. 333, supra. There also the right to share in an award granted by the Court of Commissions of Alabama Claims was under considera-

tion, and it was held that payment of a claim found to belong to the plaintiff had vested in the latter's assignee in bankruptcy who had been appointed after the date of the plaintiff's loss and before the making of the award. The award was treated like the one before the court in Comegys v. Vasse, 1 Pet. 193, 7 L.Ed. 108, as something capable of devolution and as more than a mere donation by the sovereign. But it was suggested in neither of the Supreme Court decisions that the sovereign through whom alone such awards are enforceable was without power to designate the recipients of such awards and to limit the rights therein of others. Such a power was recognized and effectuated in Burthe v. Denis, 133 U.S. 514, 10 S.Ct. 335, 33 L.Ed. 768, and Burnand v. Rodocanachi, 7 App.Cas. 333. The court in Comegys v. Vasse, 1 Pet. 193, 7 L.Ed. 108, and Williams v. Heard, 140 U.S. 529, 11 S.Ct. 885, 35 L.Ed. 550, went no farther than to hold that claims to an award which are derived through the person found by the Commission entitled to the award at the time of the loss will be recognized in favor of such person's legal representatives and assigns. The plaintiff here claims, not through the defendant, but in its own behalf, the right to share in an award made by the United States for the purpose of restoring to American insurers their net out-of-pocket expenses. As we have already pointed out, to allow the plaintiff's claim would frustrate any such purpose.

The plaintiff's cause of action turns on the intention expressed by Congress. It has said that only nationals should share in the awards made under the Berlin Treaty. The plaintiff, a foreign underwriter, is seeking to accomplish indirectly through equitable remedies what it confessedly could not achieve directly. The closeness of the analogy between the anticipated right to share in a prospective award and a property right depends wholly on the will of the sovereign through whom alone any right at all can arise. Where nothing is done to negative the complete analogy of these inchoate claims to rights of property, such rights may well attach as they do in respect to the devolution of title from a claimant to his legal successor. But the source of the claim and the control of the sovereign always affect the case and must always be borne in mind. This was clearly pointed out by Selborne, L. C., in Burnand v. Rodocanachi, 7 App.Cas. 333, 335, 336.

Lord Blackburn's remarks in the course of the decision (page 341) to the effect that the award "was not paid in such a manner as to reduce the loss against which the plaintiffs had to indemnify the defendants" are particularly apposite. Under the treaty, the act of Congress, and the decision of the Mixed Claims Commission, the plaintiff was excluded from the award, and therefore cannot recover.

Moreover, as we have already said, the doctrine which the plaintiff contends entitles it to share in the award has been applied only where the entire recovery has been based upon the loss of the insured. In such cases the beneficial interest in claims arising out of the loss passes to the whole group of insurers under the doctrine of subrogation. Each insurer has a beneficial interest proportioned to the amount he contributed. Any recovery realized has thus represented all beneficial interests. Here it is clear that the award to the defendant was based solely upon its payments and the beneficial interest which the plaintiff might have asserted as a ground for an accounting was expressly excluded.

Decree affirmed.