**VAN BRODE MILLING CO., Inc. v. KELLOGG CO. et al.**

Civ. A. No. 1321.

United States District Court
D. Delaware.

April 23, 1953.

846

Herbert L. Cobin, of Wilmington, Del., and Abraham I. Wolf, of New York City, for plaintiff.

E. Ennalls Berl (Berl Potter & Anderson), of Wilmington, Del., Matthias Concannon and Herbert Morton, of Chicago, Ill., and Edwin L. Harding, of Battle Creek, Mich., for defendants.

RODNEY, District Judge.

Upon a former occasion in this case certain views were expressed in an opinion upon which no order was entered. Since then a reargument has been requested and granted and other questions have arisen. The former opinion is now abrogated and, while certain portions are here inserted, the former opinion is superseded herewith.

The complaint in this case was filed on June 26, 1950, alleging that the defendant had violated the Sherman and Clayton Acts.[1]

Van Brode, the plaintiff, and the Kellogg Co. are both engaged in the business of manufacturing ready-to-eat cereals. Kellogg Sales is a wholly-owned subsidiary of the Kellogg Co. engaged exclusively in selling the Kellogg products.

The principal act complained of is that the defendants in their sales to institutional purchasers as a result of bids have reduced their selling price to below the actual cost of production with the alleged purpose of driving the plaintiff out of business. The complaint further states that 75% of the plaintiff's business is comprised of institutional sales on the bid basis while approximately only 2 to 3% of the defendants' business is carried on through institutional bidding. The plaintiff contends that the defendants thereby may underbid the plaintiff to a point where the bids yield no return and therefore suffer very little financial loss in respect to their whole volume of cereal business while the plaintiff is slowly forced out of business.

To this complaint the defendants answered generally denying the allegations of the complaint and setting up several defenses, including res judicata, laches, and statute of limitations.

By opinion of this court of April 25, 1951, on objections to interrogatories propounded by the plaintiff, this court, recognizing that any one of the defenses might be dispositive of the entire case, suspended action on the objections to interrogatories and gave the defendants an opportunity to move for a separate trial or other motions which would place the defenses in a position for independent determination.

A motion for separate trial on the defenses of statute of limitations and res judicata was granted on January 15, 1952. Following this motion both parties moved

1. July 2, 1890, Ch. 647, 26 Stat. 209, 15 U.S.C.A. § 1 et seq., Oct. 15, 1914, Ch. 323, 38 Stat. 731, 15 U.S.C.A. § 15.

for summary judgment on both issues set down for separate trial.

1. Since counsel for the plaintiff have agreed that any acts committed by the defendants more than three years prior to the commencement of this action are not compensable by way of damages to the plaintiff, there is no need to further consider the defense of statute of limitations.

2. The facts surrounding the defense of res judicata are clear and undisputed.

■ In the latter part of 1946 in the U. S. District Court of Massachusetts, the Kellogg Company and the General Foods Corporation instituted an action for patent and trade-mark infringement against Van Brode Milling Co. and certain other individual defendants. Van Brode, et al., filed an answer and counterclaim. A consent decree was entered on December 1, 1948, disposing of the patent and trade-mark issues and severing Van Brode's counterclaim from the case, subject to a trial at a later date. On October 17, 1949, the Massachusetts District Court entered an order dismissing Van Brode's counterclaim for failure to prosecute. Since it does not appear on the face of the order that this dismissal is without prejudice, it must, under Rule 41(b), 28 U.S.C.A., be considered as an adjudication on the merits. It is this counterclaim that the present defendants assert as being res judicata to the present action.

The two main issues to be considered are identity of parties and identity of issues.

### Identity of Parties

In the Massachusetts suit General Foods Corporation and the Kellogg Company (one of the present defendants) were plaintiffs while Van Brode Milling Co., Inc. (the present plaintiff), David Brody, Goldie Brody, and Frederic W. Swartz were the defendants. In the present action Van Brode Milling Co., Inc. is plaintiff with the Kellogg Company and Kellogg Sales Co. as defendants.

■ It is not necessary that there be complete identity of parties and their privies

in order to sustain the applicability of the defense of res judicata. But the persons between whom the prior judgment is to operate as res judicata must be the same. Fulsom v. Quaker Oil & Gas Co., 8 Cir., 35 F.2d 84; Henderson v. United States Radiator Corp., 10 Cir., 78 F.2d 674; 30 Am.Jur., Judgments, Sec. 223. See also Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263.

■ The fact that General Foods Corp., as plaintiff, and a number of individual defendants were parties to the Massachusetts action and are not parties to this suit would not bar the plea of res judicata as between the present parties.

■ Kellogg Sales Company, admittedly a wholly-owned subsidiary and exclusive sales agent of the Kellogg Company, is sufficiently identified in interest with the parent that it represents the same legal rights. The judgment in the Massachusetts action is as binding on Kellogg Sales as it is on the Kellogg Company. Hart Steel Company v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148.

Even outside the requirement of privity when one not a party to a former suit sets up the defense of res judicata against one who was a party, some courts have granted the plea on the requirements of public policy to end litigation. Coca Cola Co. v. Pepsi Cola Co., 6 W.W.Harr. 124, 36 Del. 124, 172 A. 260; Taylor v. Sartorious, 130 Mo. App. 23, 108 S.W. 1089. See also Bruszewski v. United States, 3 Cir., 181 F.2d 419.

I therefore conclude that there is sufficient identity of parties for a valid defense.

### Identity of Issues

This action is based on the Clayton and Sherman Acts in that the defendants, through concerted effort, fixed their prices in the institutional bid line of the ready-to-eat cereal business to the extent below a return of profit whereby the plaintiff is either forced to sell at a loss to meet the defendants' prices or lose its customers.

The substance of the Massachusetts counterclaim, as indicated in the footnote,[2] is an

2. "21. That this suit is not bona fide and that it was brought in furtherance of an

unlawful conspiracy entered into by the plaintiffs for the purpose of subjecting

allegation of an unlawful conspiracy between Kellogg Co. and General Foods comprising a number of acts, namely, an unwarranted and vicious suit with detrimental publicity, monopolistic price combination in rice cereals to force the counterclaimants to discontinue their business, and harassment by the circulation of false rumors.

■ It is apparent from the reading of the present complaint and the Massachusetts counterclaim that both are concerned to some extent with the activities of Kellogg Co. in connection with monopolistic price combinations with the alleged purpose of destroying Van Brode's business. It is the extent of such alleged activities that remains in doubt after examination of the present complaint and the former counterclaim or more especially the judgment dismissing the former counterclaim. The present defendants urge the court that extrinsic evidence should be examined for the solution of this uncertainty or ambiguity and that such extrinsic evidence consists of excerpts from the trial brief submitted in the Massachusetts case by the present plaintiff, defendant in the Massachusetts proceeding, stenographic notes of the Massachusetts patent trial, extracts from the Van Brode brief in the Massachu-

setts trial, and extracts from the deposition of Richard A. McNichol. That extrinsic evidence may be used has long been the rule. In Burthe v. Denis, 133 U.S. 514, at pages 522, 523, 10 S.Ct. 335, at page 338, 33 L.Ed. 768, it is said:

"As a general rule, the judgment of a court or commission is to be interpreted by its own langauge, and the pleadings or proceedings upon which it is founded. Extrinsic evidence to aid in its interpretation is inadmissible unless after reference to the pleadings and proceedings there remains some ambiguity or uncertainty in it. In such cases, resort may be had to other evidence, as where, from the generality of the language in the pleadings or proceedings, as well as in the decision, it becomes necessary to ascertain and limit the extent of the judgment intended. Thus, where a former judgment is pleaded in bar of a second action upon the same demand, it is competent to show by extrinsic evidence the identity of the demands in the two cases, if this does not appear on the face of the pleadings. [Washington, Alexandria & Georgetown Steam] Packet Co. v. Sickles, 24 How. 333 [16 L.Ed. 650]; Miles v. Cald-

the defendants to the expense of the defense thereof and as an excuse for the instigation by the plaintiffs of publicity detrimental to the business of the defendants and also as an excuse for the instigation by the plaintiffs of rumors in the trade that defendants' business was in uncertain financial condition; all these activities on the part of the plaintiffs have been undertaken for the ultimate purpose of forcing the defendants to discontinue their business and secure to the plaintiffs an unlawful monopoly in rice cereal products, eliminate price competition, and enable the plaintiffs, to the detriment of the public, to maintain the price of rice cereal products.

"22. That plaintiffs herein have conspired to exclude all other manufacturers of cereal foods from practicing the pretended inventions in Letters Patent No. 1,832,813 and No. 1,925,267, and have formed a price combination to sell their product at an excessive price and without competing with each other, all with full knowledge that the said Letters Pat-

ent were invalid. Plaintiffs come before the court with unclean hands and are not entitled to any relief afforded by the powers of a Court of Equity.

"23. That the plaintiffs herein, well knowing the two Letters Patent sued upon are invalid and void ab initio, have caused notices to be inserted in trade and daily papers of the suit instituted, such notices being worded in a manner to cause injury to the reputation of the corporate and individual defendants herein and to disparage their business integrity.

"24. Plaintiffs herein have conspired to harass the defendants with the object in view to force the defendants to discontinue their business; in furtherance of said conspiracy plaintiffs have circulated to the banking connections and suppliers of the defendants false rumors and statements respecting this suit, respecting the manner in which defendants carry on their business, and respecting the integrity and character of the individual defendants."

well, 2 Wall. 35 [17 L.Ed. 755];. Cromwell v. County of Sac, 94 U.S. 351, 355 [24 L.Ed. 195]." See also 50 C.J.S., Judgments, § 841.

Examining therefore the complaint and counterclaim in the Massachusetts case as well as the extrinsic evidence in that case on the one hand and the complaint in the present case we find the following facts.

The complaint in the Massachusetts case was essentially one of patent infringement. It is true that charges of unfair competition were also involved but these charges are not material here. The patents allegedly infringed in the Massachusetts case concerned solely the manufacture and production of ready-to-eat oven-puffed rice cereals.

The counterclaim in the Massachusetts case alleged an unlawful conspiracy between Kellogg Co. and General Foods culminating and exemplified in the bringing of the Massachusetts action in order to force the counterclaimants to discontinue their business. The counterclaim consists of Sections 21 to 24 of the Answer to the Massachusetts action. A critical examination of each of these sections shows that each section has either solely to do with the rice cereal product or refers to the subject of the Massachusetts action which insofar as here material had solely to do with alleged infringement of a patented process for the production of rice cereals.

Section 21 by its precise terms relates solely to allegations concerning rice cereals. Sections 22 and 23 relate solely to charges concerning the invalidity or unlawful use of the patents which, in turn, solely concerned rice cereals. Section 24 relates to the use that Kellogg and General Foods made of the pendency of the Massachusetts case as a means of harassment to Van Brode in an attempt to force them to discontinue their business and the complaint in the Massachusetts case solely concerned the rice cereal business.

The complaint in the present case is based upon alleged violations of the Sherman and Clayton Acts in connection with governmental or institutional "bid-business" of ready-to-eat cereals. It is not confined in its terms to rice cereals or to cereals of any particular kind.

From the foregoing recital of facts it seems that by virtue of the Massachusetts counterclaim the present plaintiff had an opportunity of pursuing a remedy against Kellogg for its alleged monopolistic price combinations in connection with some business of the plaintiff.

In view of the questions hereinafter considered it is unnecessary at this time to determine whether the opportunity of the present plaintiff to have pursued its remedy in Massachusetts under its counterclaim would have related to cereals in general or have been confined to rice cereals. Since the counterclaim in Massachusetts was never tried, to determine its extent would involve the determination of whether the counterclaim was a compulsory or permissive one for the effect of the counterclaim, even though resulting in a judgment "on the merits," differs between the two classes. The counterclaim, dismissed for want of prosecution and without qualification, operates under Rule 41(b) and (c) as an adjudication on the merits. I take it, however, that a compulsory counterclaim bars not only those matters which were actually adjudicated but also those matters which could have been adjudicated, while a permissive counterclaim bars only those matters which were actually adjudicated.

Assuming, then, that the present plaintiff had, by reason of the Massachusetts counterclaim, an opportunity of pursuing some remedy against Kellogg for its alleged and then existing monopolistic price combinations in connection with institutional bid business, and assuming that the present complaint alleges a similar course of conduct on the part of the defendant, then a serious question is presented.

Did the dismissal of the Massachusetts counterclaim for want of prosecution (which, under Rule 41(b) and (c) operates as an adjudication on the merits) so insulate the conduct of the defendant as to bar, under the principle of res judicata, the consideration of new and independent tortious actions of the defendant involving monopolistic price combinations in connec-

tion with institutional bidding occurring after the effective date of the counterclaim?

The defendant contends that it does. The defendant contends that the cause of action alleged in this case is the unlawful violation by the defendant of the legally protected interest asserted by the plaintiff of his right to engage in the ready-to-eat cereal business and to continue in that business in competition with others. The defendant insists that the same cause of action existed under the Massachusetts counterclaim that is now asserted in the present complaint.

The term "cause of action" is an elusive term defying precise definition. It may mean one thing for one purpose and something different for another. The Supreme Court has said,[3] "This court has not committed itself to the view that the phrase is susceptible of any single definition that will be independent of the context or of the relation to be governed."[4]

The defendant relies upon the oft quoted definition of a "cause of action" stemming from Baltimore Steamship Co. v. Phillips, 274 U.S. 316, 321, 322, 47 S.Ct. 600, 602, 71 L.Ed. 1069, as follows:

"A cause of action does not consist of facts but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. The mere multiplication of grounds of negligence alleged as causing the same injury does not result in multiplying the causes of action. 'The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. "The thing, therefore, which in contemplation of law as its cause, becomes a ground for action, is not the group of facts alleged in the declaration, bill, or indictment, but the result of these in a legal wrong, the existence of which, if true, they conclusively evince." ' Chobanian v. Washburn Wire Co., 33 R.I. 289, 302, 80 A. 394, 400 (Ann.Cas. 1913D, 730).

"The injured respondent was bound to set forth in his first action for damages every ground of negligence which he claimed to exist and upon which he relied, and cannot be permitted, as was attempted here, to rely upon them by piecemeal in successive actions to recover for the same wrong and injury. * * *"

■ Recognizing that a cause of action consists of a violation of a legal right and does not consist of the facts by which such violation may be proven, yet the question remains as to whether the cause of action can exist before the facts which constitute the violation of the legal right have come into existence.

■ In the Baltimore Steamship case the question simply involved several acts of negligence, all of which came into existence at or about the same time and contributed to or caused the subsequent single injury. That same case recognized the general rule established in United States v. California & Oregon Land Co., 192 U.S. 355, 24 S.Ct. 266, 48 L.Ed. 476, that a decree upon the merits concludes the parties as to all grounds for asserting the right, *known when the suit was brought.* (Emphasis added.) I am asked to apply the doctrine of res judicata to bar a claim for a violation of a right which was unknown to the plaintiff at the time of the former adjudication and to be shown by facts which came into existence after that former adjudication. I am asked, under the principle of res judicata, to grant a summary judgment which would bar the plaintiff from a recovery for the actions of the defendant, whether such actions preceded the effective date of the Massachusetts counterclaim or

---

3. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 68, 53 S.Ct. 278, 280, 77 L.Ed. 619.

4. See also Hurn v. Oursler, 289 U.S. 238, 247, 53 S.Ct. 586, 77 L.Ed. 1148; Williamson v. Columbia Gas & Electric Corp., 3 Cir., 186 F.2d 464, 469.

whether the tortious actions of the defendant happened at a later date. This I cannot do. The doctrine of res judicata is firmly entrenched in the law as to those situations to which it is applicable but cannot be enlarged beyond its clear limits. I am asked to extend the doctrine beyond the point shown in any adjudicated case.

In the Massachusetts counterclaim, giving to it the greatest measure of coverage, there was no full and free opportunity of presenting the facts pertinent to the claims of the present complaint. If the Massachusetts counterclaim was compulsory in character in the sense that it concerned rice cereals which was the sole subject of the Massachusetts complaint or whether it was permissive in the sense that it might cover cereals of a general nature not specifically referred to in the Massachusetts complaint, yet in either event the conclusion as to that counterclaim could only determine those matters in existence at that time.

■ The complaint in the present case alleges a conspiracy to interfere with the conduct of the plaintiff's business and alleges overt acts carrying such conspiracy into effect. No civil action lies for a conspiracy, as such, but the cause of action and claim for damages arises from the overt acts committed pursuant to the conspiracy.[5]

■ In Williamson v. Columbia Gas & Electric Corp., 186 F.2d 464, 468, it is said, "The tort action arises when harm is done to the plaintiff." In the same case at page 469 of 186 F.2d it is said, "In a civil conspiracy suit each invasion of plaintiff's interest resulting from the conspiracy creates a new cause of action when the question is the application of the bar of the statute of limitations." If the tort action arises when the harm is done or the overt act committed, and if this harm is done and overt act committed subsequent to a former adjudication, then it must follow that in a civil conspiracy suit each invasion of the plaintiff's interest happening after the former adjudication creates a new cause of action when the question is the application of the bar of the principle of res judicata.

Some pertinency exists in the much litigated affair between Vargas and Esquire. In 7 Cir., 164 F.2d 522 and 7 Cir., 166 F.2d 651 it was determined that a contract between the parties as to certain drawings was a valid contract and that certain drawings were owned by Esquire. In the original complaint Vargas had threatened to make drawings for other parties and Esquire counterclaimed asking that Vargas be enjoined from so doing. Vargas sought to answer the counterclaim of Esquire and to file his own counterclaim against Esquire, praying the court to determine his right to work for others. Thereupon the counterclaim of Esquire was dismissed with prejudice. Subsequently, Esquire sued Vargas, Varga Enterprises and other defendants for trademark infringement and unfair competition. A matter in issue was the extent of the former counterclaim. It was held in Esquire, Inc., v. Varga Enterprises, 7 Cir., 185 F.2d 14, 17, that Esquire was barred as to anything that Vargas had done or threatened to do prior to the time of the counterclaim as that could have been determined by the counterclaim. It was held that the claim for trade-mark infringement and unfair competition arising after the service of the counterclaim was at most a permissive counterclaim to be added by supplemental pleading and as to it res judicata did not apply.

In Mercoid Corporation v. Mid-Continent Inv. Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376, it was held that a failure to assert in a prior suit a separate statutory cause of action such as one for damages under the Clayton Anti-trust Act which, under rule 13(b) might have been asserted as a counterclaim therein, did not render that former judgment res judicata as to it.

■ I am of the opinion that the present motion for summary judgment based upon the plea of res judicata must be denied. I am of the opinion that the cause of action in the present case consists of an alleged conspiracy to unlawfully interfere with the business of the defendant as to institutional bidding, together with the overt acts by which such matter was ac-

5. Nalle v. Oyster, 230 U.S. 165, 182, 33 S. Ct. 1043, 57 L.Ed. 1439.

complished. If this conduct of the defendant including the overt acts were or could have been litigated in the former action, then the action now may be barred by res judicata. If the conduct of the defendant, including the overt acts, was not and could not possibly have been formerly litigated by reason of the then non-existence of such acts, then the causes of action in the two matters is not the same and res judicata does not apply. In Reading v. Atchison, T. & S. F. Ry. Co., D.C., 7 F.R.D. 664, an action of trespass for flooding lands of plaintiff in years 1944, 1945, 1946 was dismissed in 1946 for want of prosecution. A new suit was for the same injuries in the stated years and including the year 1947 and equitable relief was prayed. After a plea of res judicata it was held that res judicata barred the claims for 1944, 1945 and 1946 but not for the year 1947 or the claim for equitable relief. Whether or not res judicata in the present case can have application must await a showing of the overt acts constituting a portion of the cause of action for it is only then that it can be determined whether the cause of action is the same or different from that determined in the Massachusetts counterclaim.

Having determined that the cause of action in the present case is not necessarily the same cause of action relied upon in the Massachusetts counterclaim, it becomes obvious that res judicata in its fullest extent cannot be applicable. Within the doctrine of res judicata is the cognate principle of collateral estoppel [6] so well explained by Dr. Scott in 56 Harvard Law Review 1 and somewhat considered by this court in Buromin Co. v. National Aluminate Corporation, D.C., 70 F.Supp. 214. This principle applies when the second proceeding involves the same parties but does not directly involve the same cause of action. In this species of estoppel the doctrine of res judicata is of more limited application and the former proceeding is not conclusive as to those matters which might have been but were not actually litigated and determined.

■■■■■■ In addition to the defense of res judicata (or more properly in connection with it) the defendant insists that it must prevail because, as the defendant contends, the plaintiff has split his cause of action. Of course, a plaintiff may not split his cause of action and the authorities to this effect are uniform. A splitting of the cause of action, in general terms, consists of dividing a single or indivisible cause of action into several parts or claims, and bringing several actions thereon. Having determined that the cause of action in the present case may, depending upon the facts, be a different one than the one heretofore suggested in the counterclaim, then further discussion of the splitting of the cause of action becomes unnecessary.

■■■■■■ While the Massachusetts counterclaim by reason of its non-prosecution and dismissal with prejudice becomes, under the Rule, an adjudication on the merits, this does not mean that the tortious acts alleged in the counterclaim were held to be in fact legal and proper, but only that for those acts the present defendant was not answerable to the plaintiff by reason of lack of proof or prosecution or some other cause. The adjudication does not place the stamp of approval upon the acts themselves.

It is somewhat analogous to the situation where A called B a thief or other word imputing a crime. A suit by B terminating by lack of prosecution becomes an adjudication on the merits, under the provisions of the Federal Rules of Civil Procedure or the corresponding rules of the State of Delaware. This would not mean that the libellous use of words denoting a crime was not actionable so as to legalize a subsequent use by the defendant of the same words as to the plaintiff.

I have heretofore indicated that in my opinion the application of res judicata must await the showing of the overt acts as forming a part of the cause of action and being in themselves the violation of the legal right of the plaintiff to conduct its business. It had seemed that it was material at this time and in determining the effect of res judicata to consider the effective date of the Massachusetts counterclaim, viz., whether such effective date was at the time of the filing of the counterclaim, April 28, 1947, or

6. Restatement Law of Judgments, Sec. 68 et seq.

the dismissal of the counterclaim on October 17, 1949. On mature consideration this seems now unnecessary and improper. This present action was commenced June 26, 1950. It has been conceded that the Statute of Limitations of three years bars any recovery for any acts prior to June 26, 1947. It has been determined herein that overt acts occurring after the effective date of the counterclaim would not be barred by res judicata. Thus, if the effective date of the counterclaim was not the date of its filing, April 28, 1947, but such effective date was the date of the dismissal of the counterclaim, October 17, 1949, then overt acts occurring after the latter date would not be barred.

Questions as to the application of res judicata and the determination of the effective date of the counterclaim, then, would only arise if the plaintiff relied upon and sought to prove overt acts occurring between June 26, 1947 and October 17, 1949. As to such acts questions might have to be determined as to the effective date of the counterclaim, whether the counterclaim was compulsory or permissive and application of the principle of res judicata. In any event the present motion for summary judgment seeking the application of res judicata to all allegedly illegal acts of the defendants with relation to institutional bid business as to oven cooked cereals and without regard to the time of their commission (if any) may not be granted.

The motions of both plaintiff and defendants for summary judgment are denied and an appropriate order may be submitted by the plaintiff.